Smith v. Wiggins.

3s 221
122 579

A debtor agreed with his creditor that a slave should be sold at a constable's sale, and purchased by the creditor; that the property might be redeemed, and when redeemed it should belong to the son of the debtor as a gift from his father. It was held:

1. That the delivery to the creditor was a sufficient delivery to the son to constitute a valid gift by parol, and that when redeemed, the property belonged to the son.
2. That the father, having no interest, was a competent witness to establish the agreement, in an action by the son against the creditor.
3. That a sufficient amount of hire, received by the creditor, redeemed the slave under the contract.
4. In detinue against one sued individually, it is no defence that the defendant is an administrator, and that the conversion was by him only as such, and jointly with a co-administrator who is not sued.
5. The jury are to determine the value of the property, and where it was not proven, to sustain their verdict, it was held they might lawfully have drawn the inference of the value from proof of the price of the hire.

This was an action of detinue for a slave, tried before Judge Taylor, in Franklin Circuit Court, at September term, 1828, in which W. W. Wiggins was plaintiff, and J. Smith was defendant. The plaintiff recovered the slave, or his value, which was fixed at $450, and $218 for the detention.

The errors assigned by Smith in this Court, arise on a

bill of exceptions taken by him in the Court below, by which it appeared that Wiggins proved that the negro in controversy was formerly the property of his father, and that he, the elder Wiggins, and James Smith, the father of the defendant below, agreed that the negro should be sold to pay a debt due from the elder Wiggins to the elder Smith, and that the latter should purchase the negro; that if Wiggins, the elder, should redeem the slave by payment of the purchase money, then Smith should give him to young Wiggins. It was also proved, that the object of the agreement was to save the negro for young Wiggins; that Smith, the elder, purchased the negro at a sale by a constable, who had several executions; and a bill of sale made by the constable to him, was given in evidence. It was proved that Smith, the defendant below, and one Hogan, were the administrators of the elder Smith, who had died, and that the negro came to their possession jointly, by virtue of their administration, and that a demand of the property was never made until after they had administered, and that all his acts of ownership or control of the negro, were with his co-administrator, in their capacity of administrators. No proof was given of the value of the slave, except that during two years, Smith the intestate, had hired him out for $125 each year. Wiggins proved a payment by the hire of the negro, of the amount the intestate had paid for him at the constable's sale; and that the intestate frequently said he intended that the younger Wiggins should have him.

The defendant below objected to the evidence of the plaintiff's father, as being incompetent from interest, and also objected to any parol evidence of the agreement between the fathers of the parties litigant. These objections were overruled. He then moved the Court to instruct the jury that the action could not be sustained against him, if he only possessed and controlled the negro in conjunction with Hogan, and in their capacity of administrators; also that unless the plaintiff had proved a delivery of the property at the time of the gift, that the verdict should be for the defendant; and farther, that if they believed the agreement to give the negro was verbal, and without delivery, the parol gift, to take effect in future, upon conditions, was void. All these instructions were refused, and the Court charged the jury, that if it was agreed between the fathers of the two parties, at the time of the sale of the slave, that if he should be redeem-

ed, he should be given to the plaintiff, that there was a sufficient consideration to support the gift.   There were further exceptions to the admission of evidence, and to the refusal of the Court to give instructions as requested, but which are substantially embraced by the foregoing.

JULY 1830.

Smith<br>v.<br>Wiggins.

WOOLDRIDGE, for the plaintiff in error.

McCLUNG, for the appellee.

The cause was submitted.

By JUDGE SAFFOLD.   In examining the accuracy of the opinions of the Circuit Court in the admissions of evidence, and the instructions to the jury, given and refused, it may be remarked, as to the competency of the elder Wiggins, who, it may be inferred, gave evidence for his son, that though the former had been the prior owner of the slave, and both parties claimed to have derived title through him, yet in this contest, he does not appear to have had any pecuniary interest; he could neither gain nor lose by the event of the suit.   The judgment could not in any event be used as evidence for him, nor could it be used as evidence against him, in the event of a decision in favor of Smith against whom he testified. As respects the objection to the parol evidence, it is sufficient to say, if the gift was executed, there can be no legal objection that it was done by parol; whether or not it was consummated by a delivery, in the legal acceptation of the term, will depend on the view to be taken of that branch of the case.

To constitute a valid gift either *inter vivos* or *causa mortis*, there must be an actual delivery so far as the subject will admit of it.   "It must be *secundum subjectam materiam*, and be the true and effectual way of obtaining the command and dominion over the subject.

If the thing be not capable of actual delivery, there must be some act equivalent to it.   The donor must part, not only with the possession, but with the dominion of the property.[a]   This rule is the same both at law and in equity.

a 2. Kent's<br>Com. 355.

The question here is, whether, according to the subject of the gift and the situation of the parties, there was a delivery as far as the circumstances would admit of it, or that which was equivalent to a delivery.   The slave hav-

JULY 1830.

Smith
v.
Wiggins.

ing been levied upon by virtue of executions, as the property of the elder Wiggins, and the money to be made being due to Smith the intestate in his lifetime, it was contracted and agreed between the two, and by a reasonable inference, in the presence and with the assent of the younger Wiggins, that Smith should become the purchaser of the slave at the constable's sale; that under the purchase he should enjoy the possession and use of the property, until he should be thereby paid the sum due him, or in other words be refunded the amount for which he should bid him off; that this being done and the lien satisfied, the slave should then be delivered over to young Wiggins as a gift from his father to him. From the circumstances it is evident the parties contemplated a sale at only the amount due Smith, or other sum less than the value of the slave. That this arrangement reconciled Wiggins, and probably his son, to the sale, and induced them to decline any efforts to raise the money, or otherwise prevent the sale; also that it was agreed and understood by all the parties that the ultimate title to the slave should rest in the younger Wiggins, by virtue of the constable's sale, if purchased by Smith, subject only to the satisfaction of Smith's lien, by means of the hire. That the possession to be taken by him, after bidding off the property, was to inure to the benefit of Wiggins the younger, after which his father was to have no control or dominion over it; nor does it appear that he ever exercised any. Then so soon as the purchase was made, and the possession changed according to the agreement, the change of title or interest, as between the elder Wiggins and his son was consummated.[a] It must be inevitably so in the absence of any proof of subsequent dissent by the former, or the interposition of any adverse claim in favor of any one, other than Smith, who had explicitly contracted to that effect. It is true the parties could have effected a similar object without the sale by the constable, but no other course would have been less exceptionable. If it was their design to place the residue of the interest in the slave beyond the control of the elder Wiggins, or even to secure it against his creditors, if any remained, (but which does not appear,) this circumstance could not impair the force of the contract, between the parties, and previous to it. Or if the elder Wiggins from motives of paternal regard, wishing to give to his son whatever interest might remain of the slave, after paying

*a* Buller N. P.
50.

his debts, preferred giving publicity to the sale, and allowing all who wished an opportunity to bid for him, no one could have a right to object, the public was thereby informed that the old man could no longer contract on the credit of this property.

To Smith it is presumed to have been a matter of perfect indifference, whether, after his claim was satisfied, the slave should be delivered to the plaintiff, or his father. The transfer of this interest is analogous to the grant of the remainder, in real estate, to take effect and be enjoyed after the expiration of a particular estate created in the same. The remainder man is entitled to the benefit of the possession delivered to the tenant of the particular estate, and hereby the common law requisition of *livery* and *seisin* is complied with. The situation of this property, fettered as it was by the executions, would not admit of more effectual delivery. How far this doctrine would apply to a contest in which the rights of creditors, or *bona fide* purchasers without notice are involved would be a different question, but it is one which need not be examined on this occasion, as nothing of the kind is made to appear.

The agreement between the parties that the property should be exposed to sale on these terms, when for ought we know, it could have been avoided; the remuneration for his debt or purchase money, which Smith agreed to accept in satisfaction, and has actually received; together with the probable fact that the purchase, according to anticipation of the parties, was effected by Smith at much less than the value of the slave, is a sufficient consideration to sustain the contract. Such are the reasons I offer to shew there was no error in the instructions to the jury on this point. And though it may have happened by the death of the slave shortly after the purchase by Smith, that he would have lost the amount bid for him, this possibility of loss furnished no reason for rescinding or modifying the contract, voluntarily entered into between the parties, especially after it is ascertained that no loss has occurred; moreover, it is to be remembered that had the purchase been for Smith's exclusive benefit, it would likely have been at a higher price, and there would have been no less danger of death, and the consequent loss of the property. As respects the value of the property, it seems there was no evidence, except the price at which the slave hired, for two years. This though vague fur-

29

JULY 1830.

Smith
v.
Wiggins.

nished *data* from which the jury could form some opinion of the value, and as they have done so, no objection to it can be available in error.

The only remaining point necessary to be considered is, whether the Court erred in refusing to instruct the jury that the action could not be sustained, against the defendant, if he only possessed and controlled the slave, in conjunction with Hogan, and in their capacity as co-administrators. The evidence shews a demand of the property made on the defendant, and a refusal by him to deliver. The verdict connected with the nature of the action ascertains by legal intendment, that the slave was in actual possession when the demand was made. It was not required of the plaintiff to ascertain in what capacity the defendant professed to hold his property, or who claimed a joint control or interest in it. He sued, charging the defendant, not in his representative, but individual capacity, as he had a right to do in relation to any one having his property and refusing to deliver it.

A majority of the Court concur in the opinion that there was no error in the judgment in the Circuit Court, and that the same be affirmed.

Judgment affirmed.

JUDGE TAYLOR, not sitting.