Durett v. Sewall.

---

## DURETT v. SEWALL.

1. Where a father delivered a slave to a *friend* for the purpose of effecting a gift to an absent *infant* child, but immediately took the slave into his possession again, and retained the possession of her for several years, until he sold her—employing her as his own property : *Held*, that the delivery was not such an act, as divested the father of the dominion or property in the slave, or prevented him from reclaiming her ; though the law might be otherwise, if the delivery had been made directly to the child.

THE appellee brought an action of detinue against the appellant in the Circuit Court of Mobile, for the recovery of a fe-

male slave, named Matilda. The declaration is in usual form, and the cause was tried on the plea a "*non detinet*."

At the trial, a bill of exceptions was sealed by the presiding Judge, at the instance of the defendant. From the bill it appears, that the plaintiff offered evidence, to show that Lewis Sewall his father, did on the 21st October, 1826, make an absolute deed of gift to him of the slave sought to be recovered; but that deed had never been recorded in conformity to law.

At the time the deed was executed, the slave was delivered to Doctor William Stewart for the plaintiff, who paid one dollar to the donor, that sum being expressed as a consideration, in addition to natural love and affection. Whether all this took place at the house of Lewis Sewall, or at the residence of Dr. Stewart, seventeen miles distant, was doubtful from the proof. When the deed was executed, the donor was living in Monroe county in this State—the donee was a boy about thirteen years of age going to school in Georgia, where he remained for several years. Immediately upon the delivery of the slave to Dr. Stewart, she was returned to the possession of Lewis Sewall, who continued to employ her, as if she had been his own property.

A short time previous to the commencement of his suit, the plaintiff demanded the slave in controversy of the defendant, who thereto answered that she was in his possession, and was at the house of his sister, and that he would not give her up.

The defendant proved, that subsequent to 1826, the donor employed the slave as his, hired her out in Mobile, and received the hire to his own use; and that in 1831 or 1832, the sister-in-law of the defendant, purchased her for an adequate consideration, which she paid, and received a bill of sale from Dr. Stewart, executed under authority from Lewis Sewall. The defendant then gave evidence tending to show, that his sister-in-law was then in possession of the slave, and had been ever since her purchase—that he never had any possession or right of possession—the purchase being made by her.

It did not appear that the sister-in-law of the defendant ever had any notice of the plaintiff's title. Lewis Sewall was aged; had just lost his wife at the time the deed of gift bears date; was about disposing of his estate to visit his kindred in Georgia, and was free from debt.

Durett v. Sewall.

· The defendant's counsel thereupon moved the Court to instruct the jury, that if they believed the slave in question was the property of Lewis Sewall, and remained in his possession from the 21st October 1826, and was employed as his own until she was sold by him, the plaintiff was not entitled to recover her, if the defendant or those through whom he deduced title, were *bona fide* purchasers without notice. *Further*, if they believed there was no delivery of the slave, at the time of the execution of the deed, except to Stewart, and that immediately after such delivery, she was returned to the possession of the donor, and was employed by him, or controlled for his own use, until the sale to the person under whom the defendant claims, then the plaintiff cannot recover, if the purchase was *bona fide* and without notice of his claim. *And further*, if they believed the plaintiff was in Georgia at the time the deed was executed, and has never had any control over the slave, or did not reside with his father, until after the sale to the person under whom the defendant claims—that no delivery was made to any person, except to Stewart for the plaintiff, and that if such delivery was made, and possession retained but for an instant, the plaintiff cannot recover.

These instructions, the Court refused to give in the terms in which they were asked, but charged the jury as follows " If a father not indebted at the time, make a deed of gift to his child then under age—and the father deliver the deed to a third person for the benefit of the child, and at the same time deliver the slave, declaring the gift to such person to be for the benefit of the child; but the father keep possession of the slave on account of the infancy of the child—the child having no guardian appointed by law, but being under the care and control of the father, it is a valid gift, although the deed was never recorded. The father has no right to sell the slave, and if he does, the purchaser although he has no notice of the gift, and pay a full consideration, acquires nothing as against the title of the child."

The Court further charged, that if at the time of executing the deed, it was the intention of the donor to retain possession of the slave during his life for his own use, and to sell her if he thought proper; and in pursuance of such intention he re-

tained the possession and sold the slave to a *bona fide* purchaser without notice of the deed, that then the purchaser would have a perfect title; but if no such intention existed at the time of making the deed, that no subsequent act of the father could defeat the title of the child.

The Court also charged, that if the defendant, as the agent of his sister, had the control of the slave, and so declared at the time of demand made, and gave bond to respond to the result of the suit, then the action would lie against him.

To the refusal to charge and the charges given, the defendant excepted. It appears from the record, that a verdict was returned, and judgment rendered as follows: " we, the jury find for the plaintiff, and assess the value of the slave mentioned in the plaintiff's declaration, at eight hundred dollars, and the value of the hire of said slave, during her detention, at five hundred and twenty-five dollars. It is therefore considered by the Court, that the plaintiff have, and recover of the defendant the possession of said slave, or in default thereof, that he recover of the defendant, the aforesaid sum of eight hundred dollars, the value of the said slave, assessed by the jury aforesaid, five hundred and twenty-five dollars, the damages for her detention, together with the costs in this behalf expended."

To revise the judgment of the Circuit Court, the defendant has sued a writ of error to this Court.

CAMPBELL, for the plaintiff in error. This case is distinguishable from the case of Sewall v. Glidden, 1 Ala. Rep. N. S. 52. In that case the delivery of the slaves was subsequent to the execution of the deed; in this it was contemporaneous with it. Again: the delivery of possession in the present case, was a mere ceremonial transfer, while in reality, the possession remained with the donor; although the donee did not reside with his father.

The possession of the plaintiff in error, was not such as to have subjected him to an action of detinue, and the Court erred in the charge to the jury on this point. But conceding that in all this there is no error, yet it is conceived, that the verdict does not authorize the judgment for damages.

No counsel appeared for the defendant.

Durett v. Sewall.

COLLIER, C. J.—It has been often said, that a gift is not good, unless it be by deed, or unless the subject of the gift be *actually delivered* to the donee. [Sewall v. Glidden, 1 Ala. Rep. N. S. 52 ; Sims by guardian v. Sims, adm'r. at last term; Chitty on Con. 4 Am. Ed. 44, and cases cited.] Although a deed was executed by the father, professing to give the slave in question to the plaintiff, yet that deed cannot so operate as to convey the title ; because it was not registered as required by the second section of the statute of frauds. [Sewall v. Glidden.] The question then is, was the gift ever consummated by a delivery of the subject ? It is not pretended, that Lewis Sewall, the father ever delivered the slave to his son, but that the delivery was made to Dr. Stewart for him. That the subject of a gift may be delivered to the agent of the intended donee, would seem unquestionable ; but the defendant in error was an infant at the time the gift was attempted to be made, and could not depute an agent to act for him; nor does the proof show, that anything of the kind was *in fact* done. (Story on Agency, 3.)

The relation of principal and agent takes place wherever one person authorizes another to do acts, or make engagements in his name. (Paley on Agency, 1.) Dr. Stewart cannot be regarded as the agent of the defendant, for he neither did, nor could authorize him to represent him in receiving the donor's bounty ; but he was designated by the donor himself. Now is it competent for a father, who desires to give property to an infant child, to appoint some person as a depositary for the intended donee ? We will not say, that a deposit of property in the hands of a third person, if allowed to remain there, would not authorize the donee to recover it, upon the ground, that the donor had relinquished all claim to it in his favor. But such is not the present case. The father *pro forma*, delivers the possession of the slave to a friend, for the purpose of effecting a gift to an absent infant son, but all this was done without relinquishing for an instant, the dominion or property; for it is shown by the record, that the possession of the donor continued uninterruptedly for five or six years, and until he sold the slave.

. If Dr. Stewart can be regarded as an agent of any person, it must be as the agent of the father. Thus considering him, the gift was never consummated; for the father, as by law he might do, reclaimed the slave, while it was yet in the possession of his agent. It is well settled, that an authority not coupled with, an interest may be revoked by the principal, at his own mere pleasure. (Story's Agency, 485, et post. and cases cited.) The act of revocation, need not be direct and express —it may be indirect, and the result of other acts; thus, in the present case, the withdrawal of the slave from the agent's possession, before the dominion of the intended donee had attached, put an end to his authority, and annulled everything that had been done towards perfecting a gift.

The record shows that, the father intended to make the son the object of his bounty, and doubtless thought that he had done so; but he failed to execute his intention in a very essential particular, viz : in parting with the dominion of the slave, by delivering her to the son. (See Chitty on Con. 45, to 48, 4 Am. Ed.) We do not undertake to say, that a gift may not be made to an infant, without placing his hand upon the thing given; or that a delivery may not be made to some person for him in his presence; a delivery under such circumstances, should perhaps be considered as actually made to the intended donee. But we maintain, that a mere formal delivery made to a person of the donor's choice, in the absence of him to whom it is proposed to make the gift, does not without a change of possesion, invest the latter with the title of the former. The case of Sewall v. Glidden is unlike the present. The questions of law in that case, arose upon a special verdict; this Court thought it did not sufficiently appear from the finding, when, and to whom the delivery of the subject of the gift was made; and consequently remanded the cause, that a *venire facias de novo* might be awarded.

This cause must be considered as if the father himself was resisting a recovery by the son, for the plaintiff in error deduces title from the father, and has all the right which he had. If the gift was incomplete, as the evidence would indicate, it is entirely immaterial whether the purchaser from the father knew, what he had done towards giving the property to the de-

fendant. Other questions are raised, but the one examined, is decisive of the cause, unless other evidence shall be adduced, than that contained in the bill of exceptions, and we consequently decline considering them.

Injustice would often result, if principles the reverse of those we have laid down, were allowed to prevail; but the law, as we have ascertained it, will operate beneficially—if the intended donee be not present to receive the subject of the gift, a deed may be executed, which, if afterwards duly registered, will be efficient to pass title.

For the refusal of the Circuit Court, to instruct the jury conformably to this opinion, its judgment is reversed, and the cause remanded.