## POPE v. RANDOLPH, ADM'R.

1. A father desiring to give his son the use of three slaves for a year, hired them to P, with directions to pay the hire to the son, which P promised to do. Held, that this was not the transfer of a *chose in action,* and that the *administrator* of the son, could maintain an action against P, for the hire.
2. When a partnership is dissolved, and upon settlement a balance found due to one of the partners, assumpsit will lie for the amount.

3. P, having had the use of the slaves of S, and his personal services for a year, after the death of S, promised the father of S, to pay him $600 for the hire and services of S.   Held, that although this promise was without consideration, yet the jury might consider it, as a circumstance, showing the estimate P placed on the value of the services, and therefore not irrelevant.

4. A gift of the use, or hire of slaves for a year, the slaves being delivered to the person hiring, to consummate the gift, is complete by such delivery, and cannot be revoked by the donor.

Writ of Error to Perry County Court.

THIS suit was brought by plaintiff, as administrator of Singleton Shields, to recover of the defendant, for work and labor, money had and received, &c.   The cause was tried, and a verdict and judgment was rendered for the plaintiff. In the course of the trial, a bill of exceptions was tendered to the ruling of the court, which was sealed and made part of the record; from which it appears, that the plaintiff introduced proof tending to show, that in the early part of 1839, the plaintiff's intestate, being about to leave his father's residence, and to commence business for himself, his father, John Shields, gave the use of three slaves for that year. That he took them with him, and agreed with the defendant, that the defendant should furnish three slaves, and that the intestate would superintend them, and that for the year 1839, they would cultivate a place belonging to the defendant, called the McPhail place, and would equally divide the product of the farm.   That the intestate, under this contract, commenced a crop, and in June the defendant sold the place, with the growing crop, and put the purchaser in possession. That the intestate then went to the residence of the defendant, with his slaves, and he and the slaves commenced work on the plantation of the defendant, the intestate in the character of overseer, and that in the latter part of August, he died.   The plaintiff then introduced proof tending to show, that soon after the death of the intestate, the plaintiff said, that he was to give the intestate $300 for his services as overseer for the year, and $300 for the hire of the slaves,

and that he was still willing to do so, if the slaves were permitted to remain with him during the year; and on that condition promised John Shields to pay him $600. The defendant then introduced John Shields, the father of the intestate, who stated that he had hired said slaves to the defendant, with the understanding, that the defendant should pay the hire to Singleton Shields, his son. That said Singleton had no right to said slaves, except that the witness had given him the hire of them for the year 1839. That he did not loan, or hire, or give said slaves to Singleton Shields, but had hired them himself to the defendant, with the understanding, that the hire was to be paid to the deceased. That after the death of Singleton, the witness had directed the defendant to pay the medical bill, store accounts, &c. of said Singleton, and the defendant had done so, and had accounted to him, the father, John Shields, for the full hire of said slaves.

On this testimony, the defendant's counsel asked the court to charge the jury, that if they believed that John Shields hired the slaves to the defendant, with the understanding that Singleton Shields was to have the benefit of the hire for that year, that it was a contract between John Shields and the defendant, and conveyed to Singleton nothing but a *chose in action*, on which his administrator could not sue; which charge the court refused to give in the form asked for, and charged the jury, that if they believed that John Shields hired said slaves to the defendant, with the understanding that the defendant was to account to him, John Shields, for the hire, that the plaintiff could not recover. But if it was the understanding and agreement, that the hire was to be paid to Singleton Shields, the intestate, that the plaintiff could recover for said hire, and if they believed that John Shields had given the hire, or services of said slaves, to Singleton, the deceased, for the year 1839, and that Singleton Shields had hired said slaves to the defendant, that the plaintiff could recover. To which charge, and refusal to charge, the defendant excepted. The defendant also requested the court to charge, that if the jury should believe, that defendant and Singleton Shields were partners on the McPhail place, that the plaintiff could not recover in this suit; which

charge the court gave, and also charged the jury, that if they believed that after the dissolution of the co-partnership, the defendant, and Singleton Shields, the deceased, had had a settlement or an agreement after the dissolution of the partnership, and that the defendant had acknowledged that he owed the plaintiff $600 for his services as overseer, and the hire of his negroes, that then the plaintiff could recover; and that if they believed that said defendant had promised John Shields to pay him $600 for the services of Singleton and the hire of the slaves, it was a circumstance, among others, to show the amount of the indebtedness to the said Singleton Shields.

The defendant further requested the court to charge the jury, that if they believed that the promise to John Shields, to pay him $600 for the hire of the slaves and the services of Singleton as overseer, was made without any new consideration, that said defendant is not bound to plaintiff by said promise; which charge the court gave, with this additional charge, that the jury might consider the fact of such promise, as a circumstance tending to show the amount of the indebtedness of the defendant, to the intestate for his services, and the hire of said slaves.

To this additional charge, the defendant excepted.

The defendant then requested the court to charge the jury, that if they believed that John Shields had hired the slaves to the defendant, with the understanding, that Singleton Shields should have the benefit of the hire for the year 1839, it was an unexecuted gift to Singleton, by his father, which the father could control, and if he had assumed the control of the hire before it fell due, and had settled with the defendant for it, the plaintiff could not recover the hire in this action; which charge, in the language asked for, the court refused, but charged, that if they believed that John Shields had hired said slaves to the defendant, reserving the control of the hire, and had afterwards, and before the hire became due, made a settlement of said hire with the defendant, the plaintiff could not recover, but if they believed that John Shields had hired said slaves to the defendant, with the understanding and agreement, that said defendant was to pay

28

the hire to said Singleton, and in pursuance of this agreement, had delivered the possession of said slaves to said defendant, and he had received the benefit of their labor, then the plaintiff had the right to bring this suit, and recover for their hire ; to which charge the defendant excepted, and here assigns for error the charges given, and the refusal to charge as requested.

A. B. MOORE, for the plaintiff in error.

1. It is clear from the testimony of John Shields, the father of Singleton, that he hired the slaves mentioned in the bill of exceptions to B. J. Pope, the plaintiff in error, with the understanding that his son Singleton was to have the benefit of the hire. This contract therefore conveyed to Singleton Shields, or his representative, nothing more than a *chose in action*, and he could not recover for the hire of said slaves in his own name.

2. If the proof shows that Pope and Shields were partners in conducting the farm, there was no evidence on the trial that any settlement was had between them previous to the death of Shields, and no action could be maintained at law against Pope, in the name of the administrator, to recover the interest of Singleton Shields in a partnership. See Phillips v. Lockhart, 1 Ala. Rep. 524; Foster v. Alanson, 2 Term, 479; 17 Johns. Rep. 80; Holt's N. P. 368.

As John Shields was not the legal representative of Singleton Shields, any promise which the plaintiff in error may have made to him in regard to the hire of said slaves, gave no right of action to said administrator in his own name, to recover the amount so promised.

4. It is clear from the proof in this case, that the promise by Pope to pay John Shields $600 if he would let the slaves remain until the end of the year, if any such were made, was conditional, and on such conditions as John Shields had no right to make, not being the legal representative of Singleton Shields, and could not inure to the benefit of the said administrator, so as to enable him to sell in his own name.

GARROTT, contra.

DARGAN, J.—The charge of the court first objected to, and the charge requested, must be considered in reference to the testimony before the court. The defendant introduced proof tending to show, that John Shields, the father of the deceased, hired three slaves to the defendant, in the early part of the year 1839—that it was the understanding at the time, that the hire should be paid to Singleton Shields, who was commencing business for himself; and in pursuance of this agreement, the negroes went into the service of the defendant, and it was agreed that the defendant should pay the hire to the son, as the father, John Shields, intended the hire, or the use of the slaves for the year 1839, for his son. The son, Singleton, also agreed with the defendant to work the McPhail place, with the three slaves of his father, and the defendant was to furnish three others, and the proceeds, or product of that place, was to be equally divided between the intestate and the defendant. The defendant sold this place in June, and put the purchaser in possession, and the deceased then went to the residence of the defendant, and also the three slaves; the deceased to serve as overseer, and the slaves to serve on this farm. On this evidence, the charge requested was, that if the jury believed, that John Shields hired said slaves to the defendant, with the understanding that Singleton Shields should have the benefit of the hire for that year, that it was a contract between John Shields and the defendant, conveying to Singleton the *chose in action*, and that his administrator could not recover. The court did not give the charge in the language, but charged, that if John Shields hired the slaves to the defendant, with the understanding that he should account to John Shields, then the plaintiff could not recover; but if it was the understanding, and agreement, that the defendant should account for the hire to Singleton Shields, then the plaintiff could recover.

This charge, as given, when applied to the evidence, is correct. The rule of law is too well settled to be shaken, that a promise made to A, to pay B a sum of money, founded on a sufficient consideration moving from B to to the promissor, is valid, and will entitle B to bring assumpsit. See

1 Ventris' Rep. 318; 2 Cooper, 443; 1 Gill & John. 488; 16 S. & R. 169; 12 Johnson, 276. This promise is nothing like an assignment of a mere *chose in action*. The defendant owed John Shields nothing, nor did he owe Singleton Shields. But the proof shows, that the father, John Shields, intended to give his son, Singleton Shields, the use, or hire of the slaves for the year 1839. That either the intestate, or John Shields, the father, made the contract of hiring, and by the terms of the contract, the hire was to be paid to Singleton, the son, who also went into the employment of the defendant, and as the evidence discloses, had the control of the slaves. John Shields, the father, parted with the possession, with the view of giving the use, or hire of them, to his son, and the benefit of their labor was received by the defendant, and he promised he would pay the son. We cannot see that there is in this promise any thing like an assignment of a *chose in action*. It is a promise founded on a legal consideration, which was, the use or labor of the slaves. To whom did that consideration belong? The testimony of the defendant showed, that the father parted with the possession of the slaves, for the purpose of giving to his son their services, or hire, for the year 1839. The consideration, then, that the defendant received for this promise belonged to the son, if the father could make a parol gift of the services, or use of the slaves for a year, to his son, and it cannot be denied that such a gift can be made. Under this proof, it is immaterial whether the father, John Shields, or the son, Singleton, made the contract of hiring; on either supposition, assumpsit might be maintained by the son.

The charge elicited by the request, that if the jury believed that the intestate and defendant were partners, in working the McPhail place, the plaintiff could not recover, is certainly not erroneous. The charge was, that although one partner could not sue his co-partner at law, yet after the dissolution, if they come to a settlement, and a balance is found due to one, that assumpsit will lie. This is too well established to need a reference to authorities. The charge was given on the supposition, that the intestate and the defendant had ascertained the amount due to the intestate for his

services, on the McPhail place. This therefore renders it unnecessary to determine, whether assumpsit for work and labor could have been maintained by the intestate, for his services on the McPhail place, if the defendant and the intestate had made no agreement as to the amount of these services, or if nothing had ever been said by either in reference thereto.

The request made, that the promise by the defendant, after the death of Singleton, to pay John Shields $600 for the services of Singleton Shields, and the hire of the negroes, was void for the want of consideration, was given, but the court added, that the jury might look to that as a circumstance, amongst other things, in determining the value of those services.

We cannot perceive any error in this. The admissions of the defendant, as to the value of the services, would certainly be competent proof. The estimate he put on the value of the services, might be weighed by the jury, in the absence of any contract, or agreement as to the sum to be paid, in determining on the amount that the defendant should pay for those services ; and as this promise was made wholly without any consideration, and had reference only to the consideration of the hire of the slaves, and the services of the deceased, it was a circumstance that might go to the jury, to show the estimate the defendant placed on the services rendered him. They might attach little or no importance to it, but it cannot be said to be irrelevant, or its admission erroneous.

Lastly—the request, that the hire of the negroes was an unexecuted gift, that the father could revoke, and that if the jury believed he had done so, and had settled with the defendant, that the plaintiff could not recover, was properly rejected.

It is true, that to perfect a parol gift, the possession must accompany the gift. See 1 Stewart & P. 56. And to divest the title of the donor, he must deliver possession of the chattel to the donee, or to some one for the donee. See 2 Ala. R. 117, and the cases there cited. But when the use, or hire of the chattel, is intended to be given, as this is not the subject of delivery from hand to hand—if the donor parts

with the possession of the chattel itself, for the purpose of the gift, it is sufficient ; for this is the only delivery that can be made of the subject of the gift.

We can see no error in the record, and the judgment is affirmed.