(98 South. 470)

## McLEOD et al. v. BROWN et al.
### (5 Div. 876.)

(Supreme Court of Alabama. Dec. 20, 1923.)

**1. Gifts ⬤⇒28(2)—Facts held to show a complete parol gift of bonds.**

Where M. told W. that he desired to transfer to B. and wife, who were present, registered Liberty bonds, which he had, and then signed the transfer and assignment thereon, and handed them to W. to witness his signature and deliver them to B., thereby constituting W. his agent to deliver them, and W. thereafter did so, there was a perfected parol gift, whereby M. lost control of them, and they were under the custody, control, management, use, and possession of the donees.

**2. Gifts ⬤⇒28(2)—Bonds given held at death of donor in hands of bank as agent and trustee of donee, so gift was not revoked by death.**

Where, after perfected parol gifts of Liberty bonds by M. to B., a bank, to which B. presented them to have converted into coupon bonds, refused to do so without written authority from M., whereupon M. addressed to the bank a note stating "Herewith I hand you Liberty * * * bonds, * * * which * * * convert into coupon bonds and deliver to * * * B. as a gift from me," the bank was in possession of the coupon bonds, into which it converted the Liberty bonds, as agent of and in trust for B., and not as agent of M., under circumstances clearly indicating the donor had relinquished all dominion over them, so that the gift was not revoked by death of donor before the bank had delivered the bonds to the donee.

**3. Evidence ⬤⇒63—Sanity is presumed.**

Till the contrary is shown, one is presumed sane.

**4. Gifts ⬤⇒13—Unsoundness of mind which will avoid.**

To avoid a gift on the ground of unsoundness of mind of donor, there must be incapacity to understand the business transacted, as distinguished from mere weakness.

**5. Gifts ⬤⇒47(3)—Burden of proof on those asserting donor's insanity.**

Those asserting insanity of donor avoiding a gift have the burden of proof on the issue.

**6. Gifts ⬤⇒38—Undue influence which will invalidate.**

Undue influence which will invalidate a gift must in effect destroy donor's free agency, and substitute therefor the will of donee or another.

**7. Gifts ⬤⇒47(3)—No presumption of undue influence from relation, where donor was dominant spirit.**

Though donee had been treated by donor as his child, there is no presumption of undue influence, where it appears that donor was the dominant spirit in the transaction.

**8. Interpleader ⬤⇒35—Attorney's fee to be paid by claimant who was in the wrong.**

The reasonable attorney's fee, which the parties agree should be paid complainant for filing bill of interpleader, should be paid by the claimant who was in the wrong and made the litigation necessary.

Appeal from Circuit Court, Russell County; J. S. Williams, Judge.

Bill of interpleader by T. S. Davis, doing business under the trade name of Bank of Hurtsboro, against George W. and Minnie McLeod Brown, individually, and A. A. McLeod and others as executors of J. W. McLeod, deceased. From a decree for cross-complainants, George W. Brown and Minnie McLeod Brown, the respondents executors, appeal. Affirmed.

R. H. Powell, of Tuskegee, for appellants.

The burden is on appellees to show the gift was made. Jackson v. Jackson, 91 Ala. 292, 10 South. 31; 12 R. C. L. 971. Complete and unconditional delivery is essential to a gift inter vivos; such delivery must be so complete and absolute that, if the donor again assumes control over the property without the consent of the donee, he becomes a trespasser. 20 Cyc. 1195; Wheeler v. Armstrong, 164 Ala. 442, 51 South. 268; 12 R. C. L. 933; Hicks v. Meadows, 193 Ala. 246, 69 South. 432; Jones v. Weakley, 99 Ala. 441, 12 South. 420, 19 L. R. A. 700, 42 Am. St. Rep. 84; Boyett v. Potter, 80 Ala. 476, 2 South. 534; McHugh v. O'Connor, 91 Ala. 243, 9 South. 165; Brantley v. Cameron, 78 Ala. 72; Huddleston v. Huey, 73 Ala. 215; Walker v. Crews, 73 Ala. 412; Welsh v. Phillips, 54 Ala. 309, 25 Am. Rep. 679; Reedy v. Keeley, 206 Ala. 132, 89 South. 275. The bank was the agent of the donor, delivery to donees not having taken place in his lifetime. 20 Cyc. 1213; Furenes v. Eide, 109 Iowa, 511, 80 N. W. 539, 77 Am. St. Rep. 545; 12 R. C. L. 935; Durett v. Sewell, 2 Ala. 669; Easly v. Dye, 14 Ala. 158. Transactions between a father and his daughter, with whom he resides, are regarded as between persons occupying fiduciary relations, and the presumption of undue influence must be rebutted. Noble's Adm'r v. Moses, 81 Ala. 530, 1 South. 217, 60 Am. Rep. 175; Shipman v. Furniss, 69 Ala. 555, 44 Am. Rep. 528; Ryan v. Price, 106 Ala. 584, 17 South. 734; Waddell v. Lanier, 62 Ala. 347; Boney v. Hollingworth, 23 Ala. 690; 12 R. G. L. 953; Chandler v. Jost, 96 Ala. 602, 11 South. 636; Kramer v. Wernest, 81 Ala. 415, 1 South. 26; Coghill v. Kennedy, 119 Ala. 641, 24 South. 459; Ryan v. Price, 106 Ala. 587, 17 South. 734. As to test of mental condition, see 4 Mayfield's Dig. 1140. It was error to tax the fee of appellee's solicitor against the appellants. Wheeler v. Armstrong, 164 Ala. 442, 51 South. 268.

Frank M. de Graffenried, of Seale, for appellees.

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Undue influence must be such as to destroy free agency, and the burden of proving same is on him who alleges it. Lyons v. Campbell, 88 Ala. 462, 7 South. 250; Jackson v. Rowell, 87 Ala. 685, 6 South. 95, 4 L. R. A. 637; Scarborough v. Scarborough, 185 Ala. 468, 64 South. 105; Jones v. Brooks, 184 Ala. 115, 63 South. 978; Dunlap v. Robinson, 28 Ala. 100. In transactions between parent and child, the parent is presumed to be the dominant party. Stanfill v. Johnson, 159 Ala. 546, 49 South. 223; Sanders v. Gurley, 153 Ala. 459, 44 South. 1022. The law presumes every man to be sane until the contrary is shown; and the burden is on the party alleging insanity to prove it. Rawdon v. Rawdon, 28 Ala. 565; White v. Farley, 81 Ala. 563, 8 South. 215. The bonds being negotiable, the transfer and assignment thereof, accompanied by manual delivery to one of the donees, passed the legal title to the donees. The gift was complete and irrevocable. Vermilye v. Adams Exp. Co., 28 Wall. 138, 22 L. Ed. 609; Morgan v. U. S., 113 U. S. 476, 5 Sup. Ct. 588, 28 L. Ed. 1044; Code 1907, § 4985; Sherrill v. M. & M. Bank, 195 Ala. 175, 70 South. 723; Davis v. First Nat. Bank, 192 Ala. 8, 68 South. 261; Ex parte L. & N., 176 Ala. 631, 58 South. 315. The Bank of Hurtsboro was the trustee of both the doner and donees. Wiggs v. Winn, 127 Ala. 621, 29 South. 96. Costs were properly taxed against the claimant in the wrong, who made the litigation necessary. 23 Cyc. 33.

MILLER, J. This is a bill of interpleader filed by T. S. Davis, doing business under the name of Bank of Hurtsboro. It avers that it has in its possession $4,000 in Liberty coupon bonds, which are claimed by George W. Brown and his wife, Minnie McLeod Brown, and that they are also claimed by A. A. McLeod and others, as executors of the estate of J. W. McLeod, deceased; and seeks to have the bonds deposited in court; to have the adverse claimants propound their claims and title to such bonds; to have complainant relieved of liability, and his attorney paid a reasonable fee for representing him and filing the bill of interpleader.

By consent of the parties the court decreed that the complainant deposit the bonds in court, and he was thereby relieved of further liability. The court by decree also directed that one bond of $500 be sold by the register, and out of the proceeds complainant's attorney be paid $250 as solicitor's fee, and the remainder of the money be invested by the register in United States bonds; but reserved the right to make final order as to taxation of the $250 fee in final decree. It appears this decree was complied with by the complainant and the register.

The respondents, George W. Brown and wife, Minnie McLeod Brown, filed their answer in the nature of a cross-bill, in which they set up their claim, interest, and title to the bonds. They aver that J. W. McLeod, deceased, during his lifetime owned these bonds, they were payable to him, and that he duly and legally transferred, assigned, and delivered the said bonds on April 11, 1921, as a gift to them; and afterwards they delivered the bonds to the Bank of Hurtsboro, and at the bank's request delivered it written instructions from the donor to forward the bonds to the treasurer of the United States to be converted or changed into coupon bonds for these cross-complainants. The bonds were converted into coupon bonds, and returned to the bank. The Bank of Hurtsboro refused on demand to deliver the coupon bonds, when returned, to these cross-complainants; and they seek to have the bonds so delivered to them.

J. W. McLeod died testate on October 3, 1921, leaving no wife or children or their descendants. He and his wife had reared cross-complainant Minnie McLeod Brown, as an adopted daughter—though she had never been legally adopted by him, he treated her as his daughter. At the time of his death and for several years prior thereto he lived in her home, which he had given to her. His will was duly probated, and the executors of his estate are made parties to the answer in the nature of a cross-bill of George W. Brown and wife. His next of kin are a sister residing in Texas, various nephews and nieces, some of whom reside in Texas, some in Georgia, and one in Alabama; the last named having since died, leaving two children.

The executors of the estate of J. W. McLeod by their original answer to the original bill, and their answer to the cross-bill, set up and aver that the bonds belong to the estate of the decedent; that the original bonds were never delivered by the testator to the cross-complainants, Mr. and Mrs. Brown; and that, if they were delivered, the gift was void because the testator, the donor, was of unsound mind at the time when it was made; further, if the bonds were delivered, it was a void gift, as it was obtained by the donees from the donor by undue influence; and they pleaded specially that the written instrument evidencing the gift and directing the delivery of the bonds was not executed by the testator, J. W. McLeod, or by any one authorized to bind him in the premises.

The court by decree granted cross-complainants, Brown and wife, the relief desired, directed the bonds to be delivered by the register to them, and directed the executors of the estate of J. W. McLeod, deceased, to pay them out of the funds in their hands belonging to the estate the $250 fee paid complainant's solicitor, and taxed the estate of McLeod with the court cost. This appeal is prosecuted by the executors of the estate from that decree, and it is the error assigned.

That part of our statute, section 3392 of the Code of 1907, applicable, states:

"Parol gifts of personal property are inoperative until the custody, control, management, and use of the property passes from the donor to the donee, and is possessed by such donee or his agent."

In 28 Corpus Juris, p. 640, § 31(b) we find the following general rule:

"While a delivery may be made to a third party in order that the latter may deliver the subject of the gift to the donee as 'agent of the donor, the gift is not complete until there is an actual delivery to the donee."

It appears the above quoted general rule is based on the opinion of this court in Durett v. Sewall, 2 Ala. 669, and many other cases in other states there cited.

J. W. McLeod owned on April 11, 1921, in Liberty bonds, payable to himself, the sum of $4,000. He sent for the cashier, S. B. Williams, of the Farmers' & Merchants' Bank, and Williams, who went to the residence of George W. Brown, where J. W. McLeod resided, testified:

McLeod "told me that he desired that said bonds [the $4,000 bonds] be transferred to Mr. Brown and his wife and his children."

The witness advised him to transfer the bonds; it was necessary that McLeod indorse and transfer them, which should be witnessed by him as cashier of the bank, accompanied by the seal of the bank, in accordance with the ruling of the Treasury Department. S. B. Williams further testified:

"Mr. J. W. McLeod signed the transfer and assignment of each of the registered bonds which he then had, and are involved in this cause, in the form and manner I have above testified to.

"I did not then and there sign my name as a witness to the transfer of said registered bonds by McLeod, but I told him that it would be more convenient for me to carry the bonds to the bank, and there sign my name as cashier of the Farmers' & Merchants' Bank as a witness to his signature of the transfer and assignment of said bonds, and would then affix to my signature an imprint of the corporate seal of the bank, stating to him that the corporate seal of the bank was then at the bank, and that I could take said bonds to the bank for this purpose, and, after signing my name in the manner testified to, as a witness, I could deliver the bonds to Mr. G. W. Brown. Mr. McLeod said, 'All right, go ahead and do this.' "

Brown and wife were present during this conversation. This witness further stated that he carried the bonds to the bank, signed his name as attesting witness to the signature of J. W. McLeod, affixed the seal of the bank, and "delivered each and all of said registered bonds to Mr. George W. Brown, after the same had been transferred and witnessed as I have above testified to"; and he further stated "the said bonds could then be transmitted to any person or bank into whose possession said bonds came." After Williams had delivered the bonds to Brown, he was requested by Brown to send them to Washington to be converted into coupon bonds; Williams declined to receive the bonds and transmit them, because he stated to Brown that service should be performed by the bank of Hurtsboro, and not by his bank, as it required a good deal of labor and correspondence, and that Brown and McLeod did their banking business at the Bank of Hurtsboro. Brown then carried the bonds to the Bank of Hurtsboro, the complainant, and this bank would not send said bonds to the Treasurer at Washington to be converted into coupon bonds, for the reason as stated by the president of the bank, T. S. Davis, witness for the executors, cross-respondents:

"When Mr. Brown brought me the bonds, I told him that before the bank could send them off and have them changed I would have to have written authority from Mr. McLeod, and I told him in substance just what I would require. The paper writing marked Exhibit A as prepared by Mr. S. B. Williams, so he told me, and the paper executed as it now appears was handed me later on the same day at the Farmers' & Merchants' Bank by Mr. Williams. After carrying the paper to the bank, Mr. Williams came over to the Bank of Hurtsboro, according to my recollection on the next day, and stated to me, substantially as follows: That he was not satisfied in his own mind as to whether Mr. McLeod knew what he was doing in the transfer, for the reason that, when he asked him if he wanted to transfer these bonds to G. W. Brown and wife, he replied, 'Yes, I don't know who else to give them to.' I asked Mr. Williams if he meant to say that, in the event the question was raised in a court of law with reference to the gift of these bonds, he would swear that, in his opinion, Mr. McLeod was not of sound mind, and his answer was, 'Yes.' "

The witness Williams testified that he made no such statement to Davis, "that J. W. McLeod was of sound mind beyond a reasonable doubt," when he transferred the bonds, and when he signed the written paper.

The written paper mentioned above, marked Exhibit A, made at the instance of Davis, president of the bank, was signed on the same day, but after Brown presented the bonds to the Bank of Hurtsboro to be sent to Washington, and reads as follows:

"Farmers' & Merchants' Bank.

"Capital $40,000.00.

"Hurtsboro, Ala., April 11, 1921.
"The Bank of Hurtsboro, Hurtsboro, Ala. Gentlemen: Herewith I hand you Liberty and Victory bonds aggregating $4,000, which kindly convert into coupon bonds and deliver to George and Minnie McLeod Brown as a gift from me.
"Very truly, J. W. McLeod.
"Sworn to and subscribed to before me a notary public this 11th day of April, 1921.
"[Seal N. P.]
"S. B. Williams, Notary Public."

It clearly shows who are the donees of the bonds. It appears from the evidence this paper was prepared by Williams as dictated by T. S. Davis, and when J. W. McLeod signed it before Williams neither Brown nor his wife was present.

The Bank of Hurtsboro then accepted the bonds from George W. Brown, and sent them to the Treasurer of the United States at Washington, through its correspondent in Atlanta, to be converted into coupon bonds. They were returned to this bank after they were changed into coupon bonds. The donees, Brown and wife, through their attorney, before the death of McLeod, called for or demanded said bonds and the bank refused delivery, unless they gave the bank an indemnifying bond in the sum of $8,000. The coupon bonds were in the possession of the complainant, the bank, when the testator, McLeod, died in October 1921. W. T. Davis, cashier of the Bank of Hurtsboro, testified:

"Some time subsequent to the receipt of the paper writing marked Exhibit A, and subsequent also to the receipt of the Liberty and Victory bonds mentioned and referred to in said paper writing, I was down at Mr. J. W. McLeod's home, and had a talk with him. In that conversation he asked me how George Brown was getting along with his farm. It had been a wet spring, and Mr. McLeod had not been able to go to the farm very much. After I replied to his inquiry, he told me that he had sold Mr. and Mrs. Brown a tract of land near the station at Hannon, and that he was afraid that after he died or at his death they would not have enough money to pay for the land, and in order to enable them to pay for it, he had given them the Liberty and Victory bonds mentioned and referred to in the paper writing marked Exhibit A, and he then asked me if the coupon bonds into which said Liberty and Victory bonds were to be converted had been returned to the Bank of Hurtsboro. At that time, the coupon bonds had not been received at the Bank of Hurtsboro, and I so stated to Mr. McLeod. He said that when the coupon bonds were received he wanted George W. Brown to keep them until his death, and then he wanted him to sell them and pay for the land."

[1, 2] These bonds, after they were indorsed by J. W. McLeod, and after they were witnessed by the cashier, Williams, were delivered to George W. Brown, one of the donees by Williams, during the life of the donor. Williams told the donor, McLeod, "after signing my name in the manner testified to as a witness, I could deliver the bonds to George W. Brown. Mr. McLeod (the donor) said 'All right, go ahead and do this.'" The donor thereby constituted Williams his agent to deliver the bonds, after the transfer of them by him was properly witnessed, to the donees; and the agent actually delivered, handed, them to George W. Brown, the donee, and he accepted them while the donor was living. The donor, McLeod, thereby lost control of them, and they were under the custody, control, and management, use, and possession of the donees. The bonds were then a perfected parol gift from the donor to the donees under the statute. Section 3392, Code 1907. The written statement afterwards made by the donor, McLeod, to the Bank of Hurtsboro, and the declarations made to the cashier Davis of the bank, were written and oral corroborating circumstances, clearly indicating that he had given the bonds to Brown and wife, as testified to by Williams, and the purpose that prompted the gift. There was written evidence under signature of the donor, J. W. McLeod, entered of record February 10, 1921, that George W. Brown and wife owed him $4,000, secured by mortgage on land conveyed to them, and this written instrument extended the payment of $1,000 until one year after the death of McLeod, and payment of the $3,000 was extended two years after his death.

In 28 Corpus Juris, p. 640, § 32(c) we find the following general principle:

"Delivery of property to a third person as agent or trustee, for the use of the donee, and not as agent of the donor, under such circumstances as indicate that the donor relinquishes all dominion and control over the property, is sufficient delivery to complete the gift, which, in such case, is not revoked by the subsequent death of the donor before the property has been actually delivered to the donee."

The following Alabama and many other authorities are cited to sustain it: Arrington v. Arrington, 122 Ala. 510, 26 South. 152; Easly v. Dye, 14 Ala. 158; Pope v. Randolph, 13 Ala. 214; Smith v. Wiggins, 3 Stew. 221.

We find and hold the Bank of Hurtsboro, at the death of J. W. McLeod, was in possession of these bonds, under the evidence, as the agent of the donees, and in trust for the donees, and not as agent of the donor, under circumstances clearly indicating the donor had relinquished all dominion over them. Brown, the donee, placed the original bonds in possession of the bank for a particular purpose.

[3-5] Was the donor, McLeod, of unsound mind when the gift of the bonds was made to the donees, which would render the gift void? "The law presumes everyone to be sane until the contrary is proved; and it is unsoundness and incapacity to understand the business transacted, as contradistinguished from mere weakness, which must be proved, in order to avoid a conveyance," as was stated by this court in Stanfill v. Johnson, 159 Ala. 548, 49 South. 223. The burden of proof of insanity of the donor that would invalidate the gift of the bonds to the donees rested on the executors of the estate, who alleged it. Rawdon v. Rawdon, 28 Ala. 565; White v. Farley, 81 Ala. 563, 8 South. 215. The executors of his estate did not by proof meet and overcome this burden.

The deceased was nearly 81 years of age; he was weak in body, but the great weight of the evidence, practically all of it, was that on

the date and about the time the gift was made he was in feeble health, but his mind was clear and sound, and his will power strong and active. Under the evidence we are of the opinion and hold that J. W. McLeod's mind was clear and sound when he made the gift of bonds to Brown and wife; he was fully capacitated mentally to understand the transaction.

[6, 7] Was the gift of the bonds the product or result of undue influence, exerted over the donor by the donees, which would render the gift invalid?

"Undue influence, which will invalidate a gift, must be such as in effect destroys the free agency of the donor, and substitutes therefor the will of the donee or of a third party." 28 Corpus Juris, p. 653, § 50, h. n. 6, 7; Lyons v. Campbell, 88 Ala. 462, 7 South. 250.

This court in McLeod v. McLeod, 145 Ala. 272, 40 South. 414 (117 Am. St. Rep. 41) wrote:

"The complainant in the court below seeks to invoke the doctrine that in transactions inter vivos, where the parties stand in confidential relations, and the grantee, who is the beneficiary, is the dominant spirit in the transaction that the law raises up—the presumption of undue influence, and casts upon the opposite party the burden of repelling such presumption by satisfactory evidence whenever the transaction is assailed. In a case like the one before us, the question as to who is the dominant spirit in the transaction is one of fact, and becomes one of vital importance in the application of the doctrine above stated. A donation from the parent to the child, alone and of itself, would raise no presumption of undue influence, since, in the absence of evidence to the contrary, the parent is presumably the dominant party. If undue influence is charged in such a case, the burden is on the parent to show it. Every person who is sui juris and under no legal disability has an unquestionable right of disposition of his property, whether by gift or otherwise. Where the donor and donee stand in such confidential relations as parent and child, and the donor is the dominant party, whether he be parent or child, no one would for a moment question the validity of the gift on the ground of undue influence, as such presumption in law arises only where the weaker party is the donor."

See, also, Stanfill v. Johnson, 159 Ala. 546, 49 South. 223; Sanders v. Gurley, 153 Ala. 459, 44 South. 1022.

Mrs. Brown, one of the donees, was not in fact a child of the donor, but she was treated as such by him. She had been reared by him and his wife in their home, and upon her marriage and after the death of his wife he lived with her and her husband, until his death, in a home which he had given them; his nearest relative being a sister who resided in Texas. He had some nephews and nieces residing in Georgia and Texas, and two great nephews or nieces, who resided in Birmingham, Ala. His associations were with the donees; he regarded and considered them as his daughter and son-in-law, and he seemed contented and happy in the relations and in that association.

As previously stated, McLeod, the donor, was near 81 years of age, was feeble in body, but sound and vigorous in mind, and strong and determined in will. It appears to us from this evidence and we hold that the donor was the dominant spirit in this gift transaction, that he made the gift of the bonds to the donees prompted by his love and affection for them, of his own volition, without any undue influence from either of them or any one else. The trial judge in the decree correctly stated:

"The contention that McLeod was unduly influenced or non compos is not well taken."

The plea of non est factum, that the written paper, Exhibit A, above set out, was not signed by the donor, McLeod, or by any person authorized by him, is not supported by the evidence; neither the appropriateness nor sufficiency of this plea is questioned by motion or demurrer. The execution of this paper by McLeod was proved by a witness who saw him execute it, and by others who know his handwriting. There was no proof to sustain this plea, as the undisputed evidence shows that he signed it himself voluntarily, and made oath to it before an officer.

[8] The parties claiming the bonds agree that the solicitor for the complainant should be paid a reasonable fee by one of them for representing complainant and filing the bill of interpleader; neither complains at the amount of the fee ($250), which has been paid; but the cross-complainants and cross-respondents claim and contend that the other should pay it.

The complainant, the Bank of Hurtsboro, had no interest in the bonds, and it appears the bill was properly and necessarily filed under the pleading and proof against both claimants, and complainant is entitled under these circumstances and the agreement of the parties to a reasonable attorney's fee for his solicitor, commensurate with the services performed. This fee should be paid by the claimant who was wrong, failed in the suit, and made the litigation necessary. 23 Cyc. 33, 34, h. n. 48–50. The cross-respondents, executors of the estate of J. W. McLeod, deceased, lost in the claim suit, they made the litigation necessary, they were in the wrong. So, under the pleading, proof, and agreement of the parties, the court did not err in directing the $250 to be paid by the executors of the estate of J. W. McLeod, deceased, the cross-respondents, out of the funds in their hands belonging to the estate. The statement on this subject in Wheeler v. Armstrong, 164 Ala. 442, 455, 51 South. 268, has no application to the facts of this case.

We find no error in the decree, and it is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.