SIMS, BY HER GUARDIAN v. SIMS ADM'R.

1. It is essential to a *parol* gift of a chattel, that there should be an *actual delivery* of the thing.
2. A father, having rescinded a contract which he had made for the sale of a negro woman, belonging to him, called the woman into the yard, and his daughter Mary (a little girl five or six years old) to the door of his house, and in the presence of several persons, his daughter and the slave, called on the persons present, to take notice that (the woman) Rachel, was the, negro of his daughter; and further "In presence of you all, I give this negro to my daughter Mary." Previous to that time, the father frequently declared, that he intended to give Rachel to his daughter; and afterwards referring to what had taken place at his house in the presence of witnesses, declared that he had thus given her. Held, that the evidence of a gift was incomplete, and that to perfect the daughter's title, the father should have parted with the dominion of the slave in her favor.
3. It is not error for the Court to instruct the jury, that, admitting the facts shewn to be true, they do not entitle the plaintiff to recover if upon the defendant's demurring to the evidence, the Court should have rendered a verdict in his favor.

THIS was an action of *Detinue* brought by the plaintiff in error, in the Circuit Court of Dallas, for the recovery of two female slaves; *to wit:* Rachel about twenty-five years of age, and her daughter Harriet, aged ten or twelve years.

The case was tried on an issue to the plea of *non detinet.* On the trial a bill of exceptions was taken by the plaintiff, to the ruling of the Court. It was shewn to the jury, that Brittain Sims, the father of the plaintiff, at a public sale at his house, in the presence of several persons, in 1832 or '3, called the woman Rachel into the yard, and at the same time called the plaintiff to the door, and there, in the presence of those persons, the plaintiff and the slave, called on the persons to take notice, that the slave Rachel was the negro of the plaintiff; and then said "In the presence of you all, I give this negro to my daughter Mary," "who was then, as the evidence tended to shew, a child five or six years old." The plaintiff from that time to the death of her father, which took place in 1835, continued to live with him. The slave also remained with Brittain Sims during his life, and was used and controlled as his

other slaves; at his death she came to the possession of the defendant as his representative.

It was further shewn, that Brittain Sims had frequently, previous to the time of the public sale at his house in 1832 or '3, said he intended to give Rachel to the plaintiff, and on that day, after Rachel had been sold to a third person, he rescinded the contract, and immediately called upon several persons to witness his declaration of a gift, as stated above.

There was no proof of a delivery to the plaintiff, or any other person, except as stated above. Afterwards, and a short time before his death, in speaking of the transaction, he stated that he had given the slave Rachel, to his daughter Mary the plaintiff.

The Court charged the jury, that though the facts shown in evidence might be true, yet they did not establish a complete gift—but something further was necessary, in order to its consummation. What that was, the Court deemed unnecessary to state.

The jury found a verdict for the defendant, on which judgment was rendered. Thereupon the plaintiff has prosecuted a writ of error to this Court.

J. B. CLARKE and G. W. GAYLE, for the plaintiff.
EDWARDS, for the defendant.

COLLIER, C. J.—All the authorities concur in the conclusion, that it is essential to a *parol* gift of a chattel, that there should be an *actual delivery* of the thing. [Sewall by his next friend v. Glidden, 1 Ala. Rep. N. S. 52. and cases there cited. Sims v. The Adm'r. of Sims, 8 Porter Rep. 449. Brashear v. Blassingame, 1 Nott & McC. Rep. 223. Noble v. Smith, 2 Johns' Rep. 52. Linnendale v. Doe & Terhune, 14 Johns' Rep. 222. Wells v. Tucker, 3 Binney's Rep. 370.] The only question in the case before us, is, do the facts set forth in the bill of exceptions, shew that the slaves in controversy or either of them, were ever delivered by Brittain Sims the supposed donor to his daughter the plaintiff.

( It is clear that what transpired at the house of the father, on the day of the public sale, does not amount to a gift. No act

was then done, which can be regarded as a delivery, or which seems to have been intended as such. The plaintiff, a small girl is called to the door of the house, and the woman Rachel into the yard, when the father declares that, "Rachel was the negro of the plaintiff," and further " in presence of you all, I give this negro to my daughter Mary." This declaration is positive and direct, and if a gift could be perfected by the mere avowal of the wish, intention, and purpose of the owner of property, the fact shewn to the jury, would be entirely satisfactory. But the subject of the gift, the father, the daughter, and the witnesses, all separate, without the dominion of the slave having been parted with, for a single instant in favor of the intended donee.

But it has been argued for the plaintiff, that if what occurred at her father's house did not invest her with a right to the property sued for, that his previous and subsequent declarations would warrant the inference, that the gift had at some other time been consummated. To sustain this argument, we have been referred to the case of Grangiac v. Arden, 10 Johns' Rep. 303. That was an action for money had and received to the use of the plaintiff, to recover a sum of money drawn as a prize in a lottery. It appears that the defendant brought home six lottery tickets, which he said were for himself and wife, and his four children, and he wrote the name of each on the tickets, and put them in his desk. The children were not present at the time. The defendant being afterwards congratulated on his good fortune in drawing a prize, said the ticket belonged to his daughter Eliza, (the plaintiff.) In a subsequent conversation in the family, the son of the defendant said, that Eliza ought to divide the prize with the others, to which the defendant answered, "No, she should not divide it. The ticket was her own, and the prize money belongs to her, and she shall have the whole of it, and I will put it in trade for her." The plaintiff was about eight years old when the prize was drawn, and lived in the defendant's family until she married about twelve years thereafter. Two or three years before the marriage of the plaintiff, her mother being ill, reminded the defendant of the plaintiff's prize money, and requested him to take care of it for her, and the defendant replied, " You know

the ticket was Eliza's; the money is hers; and I have kept it in trade for her to a good profit.　I will never take a shilling of it, or of the profit; she shall have it all." It was also proved, by a sister of the plaintiff, that she had frequently heard her father say in their presence, before and since the plaintiff attained her majority, that he had given the ticket to the plaintiff, had indorsed her name thereon, and that the prize money belonged to her.

A verdict was taken for the plaintiff subject to the opinion of the Court, on a case presenting the foregoing facts.

The Court said, that the lapse of time since the transaction took place, ought to be taken into consideration, and induce a more liberal conclusion from circumstances, than should be allowed to more recent transactions.　" The evidence," say the Court, " from which the jury have inferred a delivery, is the declarations and acknowledgments of the defendant.　And these are numerous, and as full and ample as words could make them.　These declarations did not relate to a gift intended to be made; and are not to be viewed in the light of executory promises, to be carried into effect at some future day. But they were confessions that a gift had already been made." After recapitulating the declarations of the defendant as set out in the case stated, the Court say, " All these declarations refer to, and recognize a gift, as having been made.　They afforded reasonable ground for a jury to infer, that all the formality necessary to make it a valid gift had been complied with, and the right and title of the plaintiff to the money complete and vested; and that the same was received and held by the plaintiff, for her use and benefit." And a new trial was accordingly denied.

The case cited, it is believed, was a much stronger one in favor of the donee, than the case at bar.　The name of the daughter was written upon the ticket before the prize was drawn;—afterwards the father acknowledged that the money was his daughter's, and stated he would put it in trade for her. And about ten years after he had received the prize money, stated to his wife during her illness, that he had put the money in trade for their daughter to a good proffit, and that she should have it with all the proffit.　Strong as these facts are, the

Court did not pretend to say that they were proof positive, of a delivery; but merely that they authorized the inference, that it had been made.

The declarations of the father in the case before us, previous to the day of the public sale at his house, amounted only to this, that he *intended*, not that he had given the slave Rachel to the plaintiff. In the declaration made a short time before his death, it is said that, " in speaking of the transaction, he stated that he had given the said slave to his daughter, Mary, the plaintiff." The transaction of which he speaks, must have been the recission of the contract, by which he sold Rachel, and afterwards declared that she was the property of his daughter. This appears from the order in which the facts are narrated in the bill of exceptions, as well as from the consideration, that there was no other transaction proved. As no delivery was shewn on the day of the public sale, and as the subsequent statement referred to what then occurred, it follows that no delivery can be intended.

While we should we pleased to give effect to every prudent disposition of property, founded on a valuable consideration, or prompted by natural love and affection, we are constrained to declare, that an ancient and well established rule of law, interposes a barrier to the plaintiff's recovery. A rule, which (if we had the power to disregard,) a wise policy requires should be upheld.

As the Court undertook to inform the jury, that such was the defectiveness of the proof, they should find for the defendant, the plaintiff is entitled to occupy a position in this Court, quite as favorable as if the case had been disposed of upon a demurrer, by the defendant, to the evidence. But after making all presumptions in her favor, which could have been legitimately made by the jury, we cannot say that the Circuit Judge erred in his charge.

In concluding that the gift sought to be established, wants an essential constituent, viz: delivery, we have been influenced by the consideration, that the possession of the slave remained with the father. In Seawell, by his next friend, vs. Glidden, 1, Ala. Rep. N. S. 52, it appeared that the donee was of very tender years when the gift was made, and contin-

ued to reside with the donor, his father, up to the death of the latter, and had not, at the time of that event, attained his majority. The Court held that the gift, having been perfected by delivery and acceptance, was irrevocable by the donor. That "the donee, on account of his infancy, was not entitled to *actual* possession of the slaves, and could do no act to prejudice his rights ; and inasmuch as he could not act in respect to the property, it seems necessarily to follow, that he cannot be injured by an omission to act." And further, that as the donee had no guardian appointed under the statute, who was authorised to take possession of the slaves, the possesion of the father was the possession of the donee, and not even a badge of fraud. With the law, as there laid down, I am entirely satisfied; but the case at bar, is not at all analogous, for here the gift, as we have seen, was never perfected.

We have only to add, that the judgment of the Circuit Court is affirmed.

GOLDTHWAITE, J.—I concur with the Chief Justice, in affirming the judgment of the Circut Court; but my judgment is influenced by reasons, differing in some respects, with those advanced by him.

It is admitted by all, that delivery is essential to the validity of a gift by parol of a personal chattel, yet there is much contrariety of decision, as to the facts which make out a case of delivery. I hold it necessary to constitute a delivery, when the term is used in connexion with a gift by parol, that the chattel given, should be divested of the dominion of its former owner. It is clear, I think, in this case, that the dominion of the father was never divested, but always continued as it was before the supposed gift,

I admit a delivery may be proved by the admissions of those who are interested ; therefore, the declaration of the father, that he had given the slave to his daughter, would be evidence from which, a delivery might be inferred in the absence of other proof. Here, however, the facts show that the dominion of the father remained and was exercised at all times, until his death. The inference arising from his declaration is completely destroyed; and there was nothing but this in the case, to

have warranted the jury in finding for the plaintiff. As the entire evidence is presumed to come from that side, the defendant properly asked, and the Court gave the instructions, that admitting the whole of the evidence to be true, it did not make out a gift. )

ORMOND, J.—It is not my habit to dissent from the opinion of the majority of the Court, if I merely entertain doubts of its correctness; but in this case, I feel satisfied the decision is rested on a principle which cannot be sustained.

The evidence in the Court below was, in substance, that at a public sale at his own house, the father of the plaintiff, having sold a negro girl, induced the purchaser to rescind the sale to enable him to give the slave to his daughter. The sale being rescinded, he called the negro into the yard before him, and the plaintiff to the door of the house, and then called on the persons present to take notice that he gave the slave to his daughter Mary, who was then about six years old. His daughter lived with him until his death. The father employed the slave so given, as he did his other slaves, down to the time of his death, but had frequently, before the public sale, spoken of, declared his intention to give the slave to his daughter Mary; and a short time before his death, speaking of this transaction, said he had given the slave to the plaintiff. The Court charged the jury, that these facts and circumstances did not in law amount to a gift.

There can be no doubt, that to constitute a pure gift of personal property, delivery of the thing is an essential ingredient of the act; and if a delivery cannot be concluded out of the facts here detailed, the gift was not consummated.

It will not be denied, that the fact of delivery is, like every other fact, susceptible of being proved by inference from other facts and circumstances. Thus, if the child to whom this property was thus given, had resided elsewhere than at the house of the *donor*, and the slave was afterwards found residing with her, the influence would have been irresistible, that there was a delivery in fact. On the other hand, if the negro had remained with her former master, no such inference could fairly be made from the facts supposed. But in this case, the child

living with her father the *donor*, the property was where it should be, to be in her possession, as much as a child could have possession of property, if it had been given to her by a stranger.

It rarely happens, I apprehend, that in any case of the gift of a slave, the senseless mummery is gone through of placing the hand of the slave in the hand of the donee. The gift is usually manifested by word, and the delivery inferred from the subsequent possession by the donee. The utmost then which can be said on this part of the case, adverse to the plaintiff, is that the fact of delivery was doubtful. Conceding this to be correct, for argument sake, is there no other fact which, thrown into the scale, will make it preponderate in favor of the donee? I think there is. The father a short time before his death, said he had given this slave to the plaintiff. What is there in this case to prevent this admission from having the weight it is entitled to? The father certainly knew what he had done, and was speaking against his own interest; and unless some reason can be discovered, which has not presented itself to my mind, which will disarm it of its influence, it is conclusive to shew that the gift was perfect.

This admission is also important in another point of view. The majority of the Court consider, that the fact of the father continuing to exercise control and dominion over the property, after the supposed gift, is conclusive to shew that there was no delivery. It is true that a gift, as it transfers to the donee the possession, puts an end to the right of the donor, to control it afterwards; when therefore, after any supposed gift, if the donor is found exercising dominion over the subject of the gift, it does not prove that no gift was in fact made; because such control may be exercised by the permission of the donee, or it may be a usurpation of his rights. For I take for granted, that a gift, accompanied by delivery, is as absolute and unconditional a transfer of property, as a *bona fide* sale would be. But as such a state of things would not be the usual consequence of a gift, it would doubtless cast on the donee, the necessity of explaining the apparent incongruity. This an adult might do, by showing that the subsequent possession was by his permission, or was an invasion of his rights—

and in this case is effected by the proof, that the donor was an infant incapable of attending to her own interests, or of apprehending the consequence of such acts; and, if possible, still more conclusively, by the admission of the donor, that the slave did not belong to him.

From the manner in which the charge was given, it must be considered as in the nature of a demurrer to the evidence, otherwise it cannot be supported; and I think, from the solemnity and publicity of the act—from the fact that the donee was an infant residing with her father, the donor—and especially from the donor's subsequent admission, the jury were not only authorized, but were bound to infer a valid gift of the property. I might add, that if the facts, detailed in this case, do not constitute a gift, it is difficult to say in what manner a father could give property to his child.

I consider that this question was in effect determined, when this case was previously before this Court. [8 Porter, 449.] The Court below had charged the jury " that a delivery and *change of possession* was necessary to the validity of a gift, and that if there had been no such change of possession, the gift was absolutely void." This Court reversed the judgment, on the ground, that the jury were probably misled by the stress which the Court laid on the necessity of a *change* of the possession. " The gift," this Court then said, " was complete at the instant of delivery; and if any argument had been urged against the fact of delivery, because the slave remained with the donor, her former master, the Court should have left it to the jury to determine, whether that fact was not explained by its being also the home of the donee." Now, unless the jury could have inferred, that the child living with her father was in possession of the slave, the judgment of the Court should have been affirmed.

The facts of the case are not varied, and, from the nature of the charge, we have to pass on them; and, as we then held that the control of the father might be explained by the fact that it was also the home of the donee, such is the law of the case now.

I consider the case of Grandiac v. Arden, 10 Johns' Rep. 298. cited in the opinion of the Court, an authority in favor of

the view I am taking. In that case as in this, there was no proof of a delivery in fact of the subject of the gift, which was a lottery ticket. · The proof on that head was, that a father, who had purchased some lottery tickets, wrote the names of his children upon them; *they were not present at the time.* One of the tickets drew a prize, and on being congratulated on his good fortune, he said the money belonged to his daughter, to whom he had given the ticket. Subsequent declarations to the same effect were also proved to have been made by him. The Court held that the acknowledgements of the defendant afforded a reasonable ground from which the jury might infer, that all the formalities necessary to make a perfect gift, were complied with.

I think it is impossible to distinguish this case from the one at bar; the principle involved in both, is precisely the same, as the facts are almost identical. It is therefore my opinion that the Court erred in its charge to the jury.