164 So. 61

**COLLINS v. BAXTER et al.**

**8 Div. 641.**

Supreme Court of Alabama.

Oct. 17, 1935.

Rehearing Denied Nov. 29, 1935.

Chas. H. Eyster and A. J. Harris, both of Decatur, for appellant.

Peach & Caddell, of Decatur, for appellee Morgan Co. Nat. Bank.

S. A. Lynne, of Decatur, for appellee Baxter.

GARDNER, Justice.

The Morgan County National Bank of .Decatur, Ala., has in its vaults certain moneys, originally the property of Le Roy Robertson. Of this sum $1,665 is in gold coin, and $7,765 and $7,967 (in separate receptacles) in United States currency, which was found buried under the dwelling house of said Robertson. This money is claimed by appellant, Nellie Collins, by virtue of·an alleged gift to her by Robertson, which claim is disputed by his niece Eva Robertson Baxter, and by Robertson himself. By written agreement of the parties, it was left with said bank in trust, and without prejudice to the rights of any of the parties. In addition to this sum, there was found scattered in the leaves of an old magazine currency to the amount of $2,200, claimed also as a gift by Ruth Collins, which claim is likewise disputed as that of Mrs. Collins, and it is also held in trust in similar manner as the gold and currency unearthed under the house.

At the time of the discovery of the money in the magazine, there was found in a suitcase belonging to Robertson the further sum of $9,725 in United States currency. This, too, was left in the custody of the bank to be held in trust and without prejudice.

The bank files this bill seeking directions as to the disposition of these trust funds, and that the parties claiming the same interplead and assert their respective rights thereto.

As to the sum of $9,725, no dispute arises. It was undisputedly the property of Robertson, and by agreement a large part thereof has been paid out for expenses incurred during his illness at the hospital. No further reference thereto is necessary.

For Ruth Collins, a minor, who made claim to the $2,200 in the magazine, a guardian ad litem was duly appointed, and who endeavored to establish her claim thereto. Confessedly the. asserted claim for lack of proof showing any completed gift has failed, and consideration of this sum may likewise be laid out of view.

The real contested issue, therefore, on this appeal, relates to the claim of Mrs. Collins to the gold and currency found under the house, amounting to $17,397, in the aggregate.

The evidence offered on this issue is rather voluminous, and anything like a detailed discussion of the facts would extend the opinion to undue length, and at the same time serve no useful purpose. A brief outline, therefore, will suffice. Robertson was a bachelor, 80 years of age, who had lived alone in his home at Decatur for several years past. He had been in the employ of the railroad, and at the time here involved had been retired and was on a pension. In railroad work he had made the acquaintance of Max Collins, the husband of this appellant, and they became friends, though Robertson was twice his age. There was no relationship otherwise, though Robertson frequently spent evenings at the home of Collins, and at times would stay overnight. Mrs. Collins was kind and attentive, all of which was doubtless greatly appreciated. Robertson's next of kin were nephews and nieces, none of whom lived in Decatur, the nearest, and one for whom he seems to have had more regard (judging from his letters), was his niece Mrs. Baxter, a resident of Griffin, Ga.

In February, 1932, he became sick with a cold, and was at the Collins' home several days, then back to his house. Later he returned, having been brought to the home of Collins by his neighbor, Dr. Ayers, and there he remained for some time and until his removal to the hospital on the 17th of March, 1932. On Thursday, March 10th, his sickness became somewhat alarming. He had a chill and fever, and we think it reasonably clear from the proof that pneumonia had then developed. On the following day (Friday) his physician visited him twice, and was told by Mrs. Collins that Robertson wanted to make a will. At her request the physician called an attorney and advised the attorney if a will was to be made it should "be done right away," meaning, as we gather from his further testimony, within an hour. The physician states: "He was stuporous, lying sleeping a great deal in a stuporous condition, very little to say; we would rouse him a little and he would answer your questions, * * * there were times in which I thought his mentality was clearer, at others it was pretty foggy." And it was his opinion at that time that the patient would not last more than twenty-four hours. But the patient surprised them all, and, after being carried to the hospital on March 17th, lived until the spring of 1933, and was able to testify in this case. Immediately upon the arrival of the attorney at the house on the night of Friday, March 11th, he was met by Mrs. Collins, who informed him of Robertson's desire to make a will, and that he wanted to leave her some of his property. But the attorney, with conscientious care and caution, insisted upon a discussion of the entire matter with Robertson, and, while the testimony shows an expression on the part of Robertson of a desire to leave Mrs. Collins about half of his estate, yet the net result of the conference was a postponement, at Robertson's request, of the matter of any will until the next day. But the next day (Saturday, March 12th) there was no resumption of the question of making a will, but Mrs. Collins insists that instead Robertson suggested a gift to her, expressing an opinion that his relatives might be able to break a will. Mrs. Collins acquiesced, and at Robertson's request sent for her husband Max, who was on the premises, though then absent from the room. It was at that time Mrs. Collins insists Robertson told her and her husband, Max, of the money hidden under his house, which he wanted to give her; and that to this end he drew a diagram on a piece of tablet paper indicating the location, and at the same time explaining it to Max, with instructions as to how to get it, and stated that he gave her that money. The diagram is in evidence, but is clearly unsatisfactory and indefinite, except of course it be considered in connection with explanations given at the time. But Saturday, Sunday, and Monday passed with no effort on their part to get the money.

On Monday night Robertson's niece (Mrs. Baxter of Georgia) arrived at the Collins' home, and on Tuesday night Mrs. Collins sent for the attorney whom she had called as to the will and explained what occurred concerning the gift on Saturday morning. The attorney advised that it was a valid gift, the money was hers, but that she should get it openly in the daytime, and invite the niece, Mrs. Baxter, to go along. Mrs. Baxter secured an attorney and went with Mrs. Collins, her husband, Max, and the bank official in the early afternoon of Wednesday.

Max had some character of drawing in his hand as he went under the back porch where the money was hidden, and found the above indicated sum buried only some five or six inches under the ground. It was quickly located and unearthed with little delay, carried to the bank, where it was counted and placed in the vault.

Mrs. Collins insists the money was possessed by her when her husband as her agent took it from its hiding place, and claimed as hers when placed in the bank vault. Of course, for a valid gift there must be a delivery. The general rule relating to this question is stated in 28 Corpus Juris, 633, as follows: "All that is required is that the delivery shall be as perfect as the nature of the property and the circumstances and surroundings of the parties will permit, and hence it may be actual, constructive, or symbolical, according to the circumstances." Our authorities are in harmony with this rule. Walker v. Crews, 73 Ala. 412; Ivey's Adm'r v. Owens, 28 Ala. 641; Hudgens v. Tillman, 227 Ala. 672, 151 So. 863; Connor v. Trawick's Adm'r, 37 Ala. 289, 79 Am. Dec. 58.

And our statute (section 6896, Code) has been treated as affecting no substantial change in the law in this respect. Davis v. Wachter, 224 Ala. 306, 140 So. 361, 363.

The argument for appellant is that the diagram handed her served the same purpose as a key to a desk or a vault, and sufficed as a symbolical delivery of the money in connection with what was said as to the gift and explanation as to the diagram.

The donor's physical condition and the location of the money rendered actual delivery impracticable, and for the purpose here in hand it may be conceded appellant's proof sufficed upon the matter of delivery. Authorities supra.

The result, therefore, turns upon the question of fact as to whether or not there was a completed gift. Upon appellant, as the alleged donee, rested the burden of proof of establishing the gift by clear and convincing proof. Davis v. Wachter, supra; Hudgens v. Tillman, supra; Miller v. Tubb, 202 Ala. 631, 81 So. 573; Wheeler v. Glasgow, 97 Ala. 700, 11 So. 758; Thomas v. Tilley, 147 Ala. 189, 41 So. 854; Barnes v. Barnes, 174 Ala. 166, 56 So. 958.

"A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential requisite of a gift inter vivos. And this intention must be inconsistent with any other theory." 28 Corpus Juris, 627. "The intention must be executed by a complete and unconditional delivery." 28 Corpus Juris, 629. "In order to constitute an effectual delivery the donor must not only have parted with the possession of the property, but he must also have relinquished to the donee all present and future dominion and control over it, beyond any power on his part to recall." 28 Corpus Juris, 634. "But there must be a clear surrender of the right and of the dominion in contradistinction to a promise or an intention to surrender. There must be no reservation of any control over the property, and nothing must remain to complete the delivery. * * * The mere placing of the manual possession of the instrument in the hands of the other is not an effectual delivery unless it is done with the intention on the part of the owner to divest himself then and there of its ownership." Davis v. Wachter, supra. Of course, "it is essential to the validity of a gift that the donor shall have sufficient mental capacity to make a gift" (28 Corpus Juris, 626); and we note appellant's testimony to the effect that Robertson's mind was clear when he gave directions as to the hidden treasure and expressed his desire that she be given it.

But all the proof is to be considered both as to his physical and mental condition, in determining whether or not, (even conceding for the moment much of what appellant says occurred on that occasion) Robertson in fact had a clear and unmistakable intention to make a complete gift of the money, and an intention on his part to divest himself then and there of its ownership. While as to some detail appellant is corroborated by her daughter, Ruth, yet, in the main, as to what occurred on that occasion, rests upon her testimony and that of Robertson. He testified at two different periods of time. The first was evidently at too early a stage following his convalescence from the pneumonia attack, for when he arrived at the hospital on March 17th the nurses report that he was in a semiconscious condition. But his testimony later was more clear and satisfactory, and we are of the opinion his mind was at least as clear as it could have been on the morning of March 12th,

when appellant insists he made the gift and gave her the diagram. In each of his depositions he emphatically denies any gift, though admitting the friendly relations existing.

It was rather generally believed that Robertson had money buried around his premises. He had been seen counting his money on a bench in the back yard, and his miserly method of living was well understood. At one time some one dug some holes in the rear of his premises, and an old hat, unidentified, was found.

Appellant's home was four or five blocks from that of Robertson, and her husband, Max, was seen very often around the premises, and the testimony of one of Robertson's neighbors indicated that Robertson had been known to avoid him.

The nurses at the hospital testify rather positively that both of Robertson's arms, above the elbow, gave evidence of having been punctured by hypodermic needles in the hands of some one not an expert; and it is to be gathered that their opinion was his stuporous condition might be in part at least due to some narcotic. The physician had prescribed no such treatment. Miss Wilks, the nurse who attended Robertson first at the Collins' home on March 16th, and then at the hospital, states that when she reached the house on that date Robertson was unconscious, and, when she bathed him at the hospital the morning of the 18th, this condition of his arms was first discovered.

Max Collins, the husband of appellant, is at the Veterans' Hospital in Memphis. No effort was made to get his depositions. Whether his condition is such as to render the procuring of his testimony impracticable is left to conjecture.

Robertson's testimony indicates that he remembers little of what occurred after some one took him the last time to the Collins' home, but that at no time did he think of giving this money to Mrs. Collins.

It develops that at that very time he had in the room at Mrs. Collins' home more than $11,000 in currency. We gather from the proof he gave Mrs. Collins nothing by way of compensation for her trouble. However friendly he may have been with them, and however appreciative of their kindness, yet it is evident the miser part of his character was outstanding, and had evidently gotten the better of him. He loved his money, and had sacrificed many of the comforts of life that he might cling to it and hoard it away.

There was evidence that Robertson spoke very highly of his niece Mrs. Baxter, and that she was his "heir," and that he intended to live with her. This latter fact finds some corroboration in his letters offered in evidence.

Max Collins was evidently around the old man's premises a great deal, and witnesses, apparently without interest, testify to the avoidance of Max by Robertson. Clear it is that Max had no difficulty in a very brief space of time locating the hidden money, and the drawing Mrs. Collins says the old man made was in fact unintelligible, aside from the verbal explanations made.

Viewed in all its aspects, the impartial mind is left in a state of doubt and confusion as to what in fact did occur, and the conclusion is inescapable that appellant has failed to meet the burden of proof cast upon her.

We may go further and say that, even conceding for the moment that such did transpire, as related by Mrs. Collins, yet we are persuaded that the old man was correct in stating he remembered little of what took place after he was carried to the Collins' home, and that his weakness, both physical and mental, was such as to render him incapable of "a clear and unmistakable intention" on his part to make a gift of this money, a surrender of his right and dominion over it, and thus to divest himself of title and possession. It is not so much a matter of unsoundness of mind, of which we speak, but of mental and physical exhaustion from age and sickness, to such an extent as to render extremely unlikely that clear and unmistakable intent necessary to effectuate a valid gift. During this period of his sickness, we think, it clear from the proof Robertson was in a stuporous condition, as the physician testified, and we also think it may be reasonably inferred that he was importuned by appellant, who knew all along that he had money hidden, though without knowledge of the amount. The gift was a large one, and appellant's proof tends to show confidential relationship. A weakness of mind, though not to the extent of producing mental unsoundness, may, in view of all the circumstances, operate to overturn the gift. Thornton on Gifts, § 442. But we forego further discussion.

The conclusion is that the chancellor correctly ruled in denying appellant's claim.

On cross-appeal it is insisted the decree was erroneous in ordering the payment of the cost of the litigation out of the fund, including fee for complainant's solicitor, and that for the guardian ad litem representing the minor claimant. On former appeal (Collins v. Morgan County National Bank, 226 Ala. 376, 147 So. 161), the equity of the bill was sustained upon the theory of a bill of interpleader, as it was evidently so intended, and also as one by a trustee seeking direction of the court as to the proper disposition of the funds, and upon this latter theory it was noted that such a bill may be maintained by the trustee at the expense of the trust estate. And as to the theory of interpleader our statute (section 10390, Code 1923) leaves much to the discretion of the trial court concerning the taxation of cost and the allowance of counsel fees out of the fund. The fee for the guardian ad litem constitutes a part of the cost, and its allowance out of the trust fund was a matter resting in the sound discretion of the court. The case of McLeod v. Brown, 210 Ala. 491, 98 So. 470, is readily distinguishable on the facts. The argument presented on cross-appeal is without merit.

The decree of the court below will be in all things here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.