42 So.2d 459

### FIRST NAT. BANK OF BIRMINGHAM
### v. HAMMEL et ux.
### 6 Div. 833.

Supreme Court of Alabama.
Oct. 20, 1949.

Ellis, Lindbergh & Ellis and Matt Murphy, Jr., of Birmingham, for appellant.

Sirote, Permutt & Friend, of Birmingham, for appellees.

LIVINGSTON, Justice.

The First National Bank of Birmingham brought this suit against Paul A. Hammel and wife to set aside the transfer of a joint savings account carried in the name of Mr. and Mrs. Hammel in said bank to the sole account of Mrs. Hammel as a fraud on the creditors of Mr. Hammel.

On evidence heard ore tenus the trial court refused the relief prayed for, hence this appeal.

The uncontradicted evidence shows the following: In the year 1918 Josephine Friedberg opened a savings account with complainant, The First National Bank of Birmingham. In September 1919 she married Paul A. Hammel. Mrs. Hammel continued the savings account in her maiden name until July 25, 1945 (at which time the amount thereof was $4,436.61), when she transferred the entire account to the joint savings account of herself and husband. Mr. and Mrs. Hammel signed a signature card across which was stamped the following: "This account is joint and several and may be withdrawn in whole or in part upon the order of either of the parties in whose name this account is opened or the survivor of them." On April 21, 1948, the amount of the joint account was $6,469.45. On that day Mr. and Mrs. Hammel signed a check for the full amount of the joint account and the same was transferred to the sole savings account of Mrs. Hammel. Beginning prior to 1918 and continuing to the date of trial in the lower court, Mrs. Hammel was at all times gainfully employed and all of the funds deposited in the separate account of Mrs. Hammel and in the joint account of Mr. and Mrs. Hammel were earned and deposited by Mrs. Hammel who at all times had and retained possession of the bank pass book evidencing the accounts. Mr. Hammel never contributed to or withdrew any funds from either the separate account of Mrs. Hammel or the joint account of Mr. and Mrs. Hammel.

About the year 1940 Mr. Hammel failed in business and, in 1941, the complainant, The First National Bank of Birmingham, received and recorded a judgment against Mr. Hammel.

Mrs. Hammel testified in effect that she was prompted to transfer her separate account to the account of herself and husband in 1945 because of her ill health and in order that her husband could use the deposit without the administration of her estate in the event of her death. That she had no intention of making a present gift to her husband. Both Mr. and Mrs. Hammel testified in substance that at the time the account was transferred in 1948

from the joint account to the sole account of Mrs. Hammel, Mr. Hammel signed the check at the instance and request of an officer of the bank.

We are fully persuaded, as the trial court must have been, that Mr. Hammel contributed nothing whatever to the joint account of himself and Mrs. Hammel. Any interest which he may have had in that account was by and through the actions of Mrs. Hammel. Under the facts of this case he could have had no present interest in the joint account other than by a gift inter vivos from Mrs. Hammel. If there was no gift, the decree of the trial court, though denying in general terms the relief prayed, must be sustained on the theory that no gift was consummated. If he had no present interest in the joint account he could of course transfer or convey none.

Much has been written on this and kindred questions presented to the courts on the subject of joint savings accounts. See, Anno. 48 A.L.R. 190; 66 A.L.R. 881; 103 A.L.R. 1123; 12 L.R.A.,N.S., 355; L.R.A.1917C, 551, and cases there cited.

We make no attempt to here analyze or reconcile the cases. There are however some essentials to a valid gift of a savings account deposit which are recognized by all courts and textwriters. Thus before any right to a savings account deposit can be said to pass from a donor to a donee, there must be a donative intention. The donor must intend that either the legal or equitable title to the fund shall pass to the donee. It is also uniformly held that mere intention to make a gift to take effect during the life of the donor is not sufficient to pass any title either legal or equitable. There must be some act performed by the donor which indicates his intention to vest in the donee some right to the property during the life of the donor. It is also an elementary rule of law that in gifts inter vivos as well as gifts causa mortis the title to the things given must pass from the donor to the donee. And at common law in a case of a gift inter vivos or of a gift causa mortis of personal property capable of manual delivery, an actual delivery of the proper-

ty is necessary to consummate the gift. But the rule has been relaxed as to personal property not capable of manual delivery. In such a case a symbolic delivery is held sufficient to constitute an enforceable gift. Keeping these principles in mind, a reference to the evidence clearly sustains the decree of the trial court.

Mrs. Hammel earned and deposited all of the funds in the savings account while it was carried in her name and also while it was carried in the joint names of herself and husband. She at all times had and retained possession of the pass book evidencing said accounts. She could have withdrawn all of the funds in either account at any time without the consent of Mr. Hammel. As previously stated, she testified in substance that she never intended to make a present or gift of the deposit or any part thereof to her husband. Under these circumstances, the trial court could well find that no present gift to Mr. Hammel was intended and that, therefore, he had no interest in the joint savings account to convey. See, Clark v. Young, 246 Ala. 529, 21 So.2d 331; General Acts 1945, p. 354, Title 5, section 128 (2a), pocket part, Code 1940.

Affirmed.

BROWN and FOSTER, JJ., concur.

LAWSON, SIMPSON and STAKELY, JJ., concur in the result.