51 So.2d 506

### DE MOUY v. JEPSON.
### 1 Div. 423.

Supreme Court of Alabama.

March 22, 1951.

Marshall J. DeMouy and Inge, Twitty, Armbrecht & Jackson, all of Mobile, for appellant.

Rickarby & Rickarby and J. Jefferson Bennett, all of Fairhope, for appellee.

SIMPSON, Justice.

This suit was brought in the circuit court, in equity, on a bill by appellee, Emily Jepson, as legatee under the will of Mary E. Rupf, deceased, against Sophie G. De-

Mouy, individually, and as executrix under the will of said decedent. By agreement of the parties, there was consolidated with said cause a case on appeal to the circuit court in a detinue suit instituted in the justice of the peace court between the parties, involving certain personal property, to be mentioned later, owned by decedent in her lifetime.

This suit was instituted under the provisions of § 159, Title 7, Code 1940, and the general authority of equity, to have the court construe Paragraph A of the will and the first clause of the codicil.

Paragraph A of the will reads: "I give, devise and bequeath to my beloved friend, Emily Jepson, wheresoever situated, now of 510 Wilmott Avenue, Bridgeport, Conn., my home wherever situated, now of 301 White Avenue, Fairhope, Alabama, including all furniture and equipment."

The codicil reads: "First I wish my home that is left to Mrs. Emily Jepson of Bridgeport, Connecticut, to have the lease, adjoining my home, on the West thirty-three feet to go to her with the home."

There are two issues in dispute between the parties, one involving personal property consisting of one dining room set, one china cabinet, one buffet, and one red carpet, which were situated in the property devised to Mrs. Jepson, which Mrs. DeMouy is claiming under a memorandum hereafter to be considered; and a strip of land approximately nine feet in width between the Jepson house (the "home" mentioned above) and Mrs. DeMouy's house on the east, which Mrs. DeMouy received by the terms of the will as residuary legatee. The personalty is the subject property of the detinue suit mentioned above.

The memorandum under which Mrs. DeMouy claims the aforesaid articles of personal property, though they were, at the time of testator's death, in the "home" which Mrs. Rupf devised to Mrs. Jepson, was dated after the execution of the will and is as follows: (Sophie is Mrs. DeMouy) "Chair for Dr. Dahlgren. Antique desk for Marshall. Dining room set for Sophie. 4 dinner plates for Allison. Antique drop leaf table for Sophie. Vase for Mrs. Damrell. Silver pitcher and dishes for Mrs. Ernest. Little house on 75 foot lot & furnishings for Sophie. Clothes basket for Sophie. Chair for Mrs. Moore. Book case or mahogany victrola for Mrs. Cheeseman. Red carpets and pink drapes for Sophie. Large chest and pink camellia for Mary Rose. Double cot, mattress & covering for Sophie."

Appellant, Mrs. DeMouy, contends that by this memorandum the articles of personal property mentioned were gifts inter vivos from Mrs. Rupf to her, in consequence of which they were lifted from the terms of Paragraph A of the will above quoted, entitling her to receive them rather than Mrs. Jepson. Appellee, however, advances the contrary contention, which was sustained by the trial court, that if given any effect at all, the memorandum was testamentary in character, and not having been mentioned in and having no relation to the will, was void as not having been executed in the form as required by law. We are in accord with that ruling. We think the evidence is too uncertain and unsatisfactory to show a completed gift to Mrs. DeMouy.

It is an essential prerequisite of a gift inter vivos that there must be a clear intention of the donor to make the gift with the donor's relinquishment of all present and future dominion thereover and a delivery to and acceptance thereof by the donee. Collins v. Baxter, 231 Ala. 247, 164 So. 61.

The burden is on the donee, the appellant here, to establish the fact of gift by clear and convincing proof and if the impartial mind is left in doubt or uncertainty as to exactly what the status of the transaction was, the donee has failed to discharge the burden imposed and the claim of gift will fail. Collins v. Baxter, supra; Hudgens v. Tillman, 227 Ala. 672, 151 So. 863; Miller v. Tubb, 202 Ala. 631, 81 So. 573; Wheeler v. Glasgow, 97 Ala. 700, 11 So. 758; Thomas v. Tilley, 147 Ala. 189, 41 So. 854; Barnes v. Barnes, 174 Ala. 166, 56 So. 958.

We think the evidence is entirely too uncertain as to just what result the memorandum did have upon the clear terms of the

will and the contested articles of personal property described in Paragraph A of the will. All the evidence shows to sustain the gift inter vivos to Mrs. DeMouy is that Mrs. DeMouy was residing in the home of Mrs. Rupf and looking after her business for her when the memorandum was purportedly executed and when Mrs. Rupf died. The only proof as to the execution and delivery of the memorandum was that it bore Mrs. Rupf's signature and that within two or three months of her death, according to the deposition of Morgan, a tenant of hers, she told Morgan that she had directed Mrs. Sophie G. DeMouy to make up a list of certain personal property which she desired to give (not had given) to various people, that Mrs. DeMouy did make up such list and that she, Mrs. Rupf, had signed it and had had it witnessed by Mrs. DeMouy and that she had delivered it to Mrs. DeMouy. It was in Mrs. DeMouy's possession when it was presented in court. The articles described in the memorandum "for" Mrs. DeMouy which are in litigation here remained in the home of Mrs. Rupf until after her death and thus, as we view it, there was never any completed delivery with relinquishment of control to make an executed gift.

It is to be conceded, as argued by able counsel for appellant, that where the personal property is not susceptible of manual delivery, symbolic or constructive delivery is sufficient to constitute an enforceable gift and under circumstances where a gift is evidenced by writing executed by the donor, the delivery of the writing is held to be sufficient delivery to support the gift. Collins v. Baxter, supra, and cases cited; First National Bank v. Hammel, 252 Ala. 624, 626, 42 So.2d 459; Goodson v. Liles, 209 Ala. 335, 338, 96 So. 262; 38 C. J.S., Gifts, § 22, pp. 801, 802.

But conceding the execution and delivery of the memorandum, whatever may have been its dubious import, the circumstances disclosed by the present record fail to satisfactorily convince the impartial mind of a completed gift inter vivos. True, the other items listed in the memorandum are not contested here as being completed gifts to the respective persons named therein, but these articles were delivered presumably before Mrs. Rupf's death and we will assume with her authorization or approval. The circumstances with reference to them are not shown and the articles are not in contest. The situation is different as regards the articles claimed by Mrs. DeMouy. There is no evidence that Mrs. Rupf ever parted with the dominion and control over them or that they were ever delivered over to Mrs. DeMouy, and without a release of dominion and control over them and a delivery by the donor to the donee, regardless of the status of the other articles mentioned in the memorandum, the gift was not completed. Our view of the case is that the memorandum as regards the personal property in suit must be regarded as merely indicative of Mrs. Rupf's intention as to the disposition of the articles after her death, as is not unusual with so many elderly people, ignorant of the legal requisites of carrying out such a testamentary purpose. There was no change of possession of the property and we are bound to hold that the claim for a gift inter vivos for the personalty in suit must fail. The following may be cited as clearly sustentive: Barnes v. Barnes, supra; Thomas v. Tilley, supra; Sims v. Sims, 2 Ala. 117; Hunley v. Hunley, 15 Ala. 91.

The other phase of the case relates to the nine-foot strip of land in dispute between the "home" devised to Mrs. Jepson and the "little house" immediately east of Mrs. Jepson, which went to Mrs. DeMouy under the residuary clause.

It is to be first noticed that this property is in the single tax colony of Baldwin County, where the title to real estate on which the respective houses are situated rests in the colony, with a leasehold interest only in the respective parties. The end result, however, will be the same as regards the disputed strip of land as to the leasehold interest acquired. The lots were platted by the colony as sixty-six feet each in width, but the evidence is rather preponderant that in the use of these respective pieces of property, the lot lines were not observed, but the eastern boundary line of the curtilage of the home place where Mrs. Rupf resided, which was devised under Paragraph A of

the will above to Mrs. Jepson, was between five and nine feet west of the eastern lot line of Lot 1, on which the home was situated; and the curtilage of the property on the east, willed to Mrs. DeMouy, extended beyond the western lot line of Lot 2, upon which her house is situated, over into Lot 1 so as to include the disputed strip. Thus the claim of appellant that when Paragraph A willed to Mrs. Jepson "my home wherever situated, now of 301 White Avenue, Fairhope, Alabama," it was intended as a devise of the home and the curtilage without regard to the exact location of the platted lot lines. We are strongly impressed with the merit of this contention. The learned trial court entertained the contrary view and we are constrained to pronounce error in that regard.

This provision of the will devising the "home" to Mrs. Jepson is manifestly ambiguous as to exactly what area of land was intended to go with it. The will as to the residuary clause is general and silent as to the area of land to go with the little house east of the home, which is Mrs. DeMouy's. Under such circumstances the intention of the testator must be ascertained not only from the language of the will, taken in connection with the existing circumstances known to the testator at the time of drafting the will, but also from the testator's relevant declarations or statements at or about the time of the will's execution. Smith v. Nelson, 249 Ala. 51, 29 So.2d 335(11); Money v. Money, 235 Ala. 15, 176 So. 817; Dozier v. Dozier, 201 Ala. 174, 77 So. 700. Cf. Achelis v. Musgrove, 212 Ala. 47, 101 So. 670; Vandiver v. Vandiver, 115 Ala. 328, 22 So. 154; Chambers v. Ringstaff, 69 Ala. 140; 94 A.L.R. 151.

Turning then to the evidence as to exactly what real estate was intended by Mrs. Rupf to be devised with "my home * * * 301 White Avenue, Fairhope, Alabama," we think it establishes rather convincingly that she intended the nine-foot strip in dispute, most of which is a part of the curtilage of the property devised to Mrs. DeMouy, to go with that property, making the width of the lot seventy-five feet; and the real estate with the "home" place to be the remainder of the sixty-six feet of Lot 1, together with the west thirty-three feet devised in the first codicil to Mrs. Jepson, to be the land intended to go to Mrs. Jepson.

The word "home" as here used certainly did not mean that Mrs. Jepson should only receive the house and the land on which it is situated, but meant that she should receive the house and the curtilage thereof, viz., her "home" where she lived and the grounds used in connection therewith. Black's Law Dictionary defines curtilage as a "space, necessary and convenient and habitually used for the family purposes, and the carrying on of domestic employments." We have approved the substance of this definition. Ivey v. State, 61 Ala. 58, 61; McNutt v. State, 23 Ala.App. 43, 46, 121 So. 432; Holland v. State, 11 Ala. App. 164, 166, 65 So. 920.

The will, of course, speaks as of the time of the testator's death. It seems she had already executed the memorandum mentioned above, in which she referred to the property devised to Mrs. DeMouy as "little house on 75 foot lot." This strongly indicates she did not consider or intend the seventy-five feet (which included the nine-foot strip in dispute) as a part of her home place, but as a part of the curtilage of the property she had devised to Mrs. DeMouy. While, as heretofore observed, this memorandum was not effectual to enforce an executed gift of the property designated as "for Sophie" (Mrs. DeMouy), it is admissible under the rule heretofore adverted to as bearing on the intention of the testator as regards this ambiguous devise. Then there is testimony of statements made by Mrs. Rupf going to show that she intended Mrs. DeMouy to have this nine feet of ground so that a porch should be built on "this small house." (Record, p. 23)

The whole case considered, we think the circumstances regarding the use of the respective properties prevailing at the time of the execution of the will, up to the death of testator, the memorandum later executed and testator's statements in regard to the matter, clearly evince her intention that the west nine-foot strip of Lot 1 go to Lot

2 and to Mrs. DeMouy. as part of the curtilage of the little house so as to make the area seveny-five feet in width. It will be so decreed.

Short of these two main controversies, the question of costs is to be considered. The bill was filed by Mrs. Jepson, to construe the will and the memorandum, in which she claimed all of the property, including the little house devised to Mrs. De-Mouy. She did not succeed fully in sustaining this interpretation. She has succeeded in enforcing her interpretation of the will as to the personal property, but not as to the little house or the nine-foot strip claimed by her to be a part of the devise under Paragraph A of the will. The fixation of costs is a matter within the sound discretion of the court and we believe it would be fair to assess one half the entire costs against the appellee and one half against the appellant, individually, and it will be so ordered.

Affirmed in part and in part reversed and rendered.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.