57 So.2d 521

**LIVINGSTON v. POWELL.**

**3 Div. 632.**

Supreme Court of Alabama.

March 10, 1952.

Grady Reynolds and Reynolds & Reynolds, Clanton, and Thomas W. Graff, Roanoke, for appellant.

J. G. Duncan, Jr., Prattville, and Floyd H. Mooneyham and Godbold & Hobbs, Montgomery, for appellee.

**FOSTER, Justice.**

This is an appeal from a decree of the circuit court in equity, in a suit seeking a declaratory judgment. The bill was filed by complainant, appellant, against respondent, appellee, for the purpose of determining the ownership of certain stocks, bonds and cash which, at the time of the death of T. J. Hicks, were in a safety deposit box of the First National Bank of Montgomery. Appellant claimed the securities and money under a gift alleged to have been made to him by the deceased T. J. Hicks. The appellee, Katie Hicks Powell, was the next of kin of the deceased, his sole heir and the residuary legatee under his will and executrix of his estate. The securities consist of United States Savings Bonds, series G; one State of Alabama Harbor Improvement Bond; four Alabama Renewal Bonds, Class C; thirty-five shares of preferred stock in the Wesson Oil Company; thirty shares of preferred stock in Moore-Handley Hardware Company; thirty shares of preferred stock in Birmingham Electric Company, together with twelve $100 bills in cash.

A brief history of the situation is that there were four brothers, the deceased T. J. Hicks, J. G. Hicks, L. D. Hicks and William Hicks who was the father of Katie Hicks Powell. The appellant was a nephew of the wife of L. D. Hicks and otherwise was no relation to any of the brothers. T. J. Hicks and J. G. Hicks were never married. In 1918, when the appellant was about two and one-half years of age (his father and mother being dead), he was taken into the Hicks home by Mr. and Mrs. L. D. Hicks. T. J. Hicks and J. G. Hicks also resided in the same home. Appellant was reared in the family and was treated as one of them. They all became very much attached to him. L. D. Hicks set up a trust for his education and maintenance, not here material. After the death of L. D. Hicks and removal of his wife, the other brothers in the home, T. J. Hicks and J. G. Hicks, assumed the role of parents toward him.

On November 19, 1934, J. G. Hicks rented a safety deposit box in the First National Bank of Montgomery, making the appellant co-owner or co-lessee of the box. The box was number 1036, and is sometimes referred to as box number 10. J. G. Hicks died in 1935, leaving appellant as the sole owner or lessee of this box. After the death of J. G. Hicks, appellant executed an instrument or direction to the bank on a standard form also signed by T. J. Hicks in the following words: "I hereby designate and appoint T. J. Hicks, whose signature appears below, as *I* duly authorized deputy, equally with me to have access to and control over safe No. 10 rented by me in the vaults of the First National Bank of Montgomery, Alabama, and to remove the contents therefrom at will." T. J. Hicks had another safety deposit box in the First National Bank of Montgomery, which he

rented in his own name. He died August 16, 1949. There was found in said box No. 1036, after the death of Mr. Hicks, the securities and cash above mentioned. There was no endorsement on the securities or any indication in the box to show that there had been intended an assignment of the property to appellant. All of the stock and bonds were registered in the name of T. J. Hicks, and he had collected the dividends and interest, respectively, all the time as his own.

T. J. Hicks had executed a will which was probated after his death, dated December 14, 1948. The appellant had for many years been living out of the State. He had been educated and reared by the Hicks brothers. In 1946, T. J. Hicks set up a revocable trust with the First National Bank of Montgomery as trustee, in which trust he was to receive the income during his lifetime, with appellant as the sole beneficiary at his death. When created, the trust had a value of approximately $22,000. In March 1949, about five months before his death, Mr. Hicks added $5,000 to the trust, and a few days later amended this trust by changing the method of distributing the principal to appellant after his death. The records of the bank show that on March 21, 1949, the day when the $5,000 was added to the trust, Mr. Hicks entered box No. 1036, but did not enter his individual box then nor during that year. For many years before his death, he paid the rent on this box (No. 1036); whereas appellant had not visited the box for several years, as shown by the records and his testimony, and had lost the key which he had. After the death of Mr. Hicks, appellant had the bank drill the box open, at which time the securities and money were found.

The contention of appellant is that those securities placed in the box by Mr. Hicks were thereby delivered to him and intended as a gift from T. J. Hicks, with the reservation of the income for his life.

There is no direct testimony of any such purpose on the part of Mr. Hicks. Appellant was not privileged to testify with respect to any transaction had with him in respect to those matters because of the interest of the estate in the result of the suit, section 433, Title 7, Code, and there was no other witness who testified as to any such purpose on the part of Mr. Hicks in his lifetime.

The trial court ruled against appellant in respect to the securities, to which we have referred, but with him with respect to the money that was found in the box.

Appellant has assigned errors to the extent that the decree is adverse to him, and appellee has cross assigned errors as to the $1,200 in money.

There is no evidence of the exact time when such parol gift might have been made. But if it was made at all, it was after the death of J. G. Hicks in 1935, and after the appellant as co-lessee of box No. 1036 "appointed" T. J. Hicks his deputy with respect to it, for it was only then that he acquired access to said box, and after appellant and Mr. Hicks went into the box about two or more years before Hicks died, when he gave appellant $2,000, which was all there was in the box. So that, if there was any such gift intended to be made by Hicks to appellant, it was after the Uniform Stock Transfer Act of the Legislature of Alabama, as now set forth in sections 48 et seq., Title 10 of the Code of 1940, after which also the stock certificates bear date. Section 56, Title 10, Code, deals with the transfer by delivery, without endorsement, of certificates of stock of Alabama and some out of state corporations. So that, at least some of the stocks referred to, and perhaps all of them, are controlled by that Act. Under section 56, supra, when a stock certificate is attempted to be transferred by delivery, without the endorsement requisite to pass the legal title, section 48, Title 10, Code, but with the intent to transfer it, there is imposed an obligation on the part of the transferor to complete the transfer by making the necessary endorsement, and this obligation by that statute is made subject to specific performance. Section 57, Title 10, Code, deals with an attempted transfer of title to a certificate without delivery of the certificate, and provides that the same shall have effect as a promise to transfer, and that any obligation thereby

imposed shall be subject to the law governing the formation and performance of contracts.

Those two statutes have been considered in the case of Johnson v. Johnson, 300 Mass. 24, 13 N.E.2d 788, as meaning that under section 56, supra, no consideration, is necessary to require specific performance of the contract imposed under the circumstances there declared; but that under section 57, supra, specific performance would not be decreed without such consideration as would justify its performance upon general principles under the laws of the state. The cases of Davis v. Wachter, 224 Ala. 306, 140 So. 361; McGowin v. Dickson, 182 Ala. 161, 62 So. 685, and other such cases, were controlled in some respects by the law as it existed prior to the enactment of the Uniform Stock Transfer Act, to which we have referred.

Section 56, Title 10, Code, is the statute which affects the current transaction insofar as it relates to stock of a corporation which was organized under the laws of Alabama or of some other state whose laws are consistent with that article. Section 69, Title 10, Code.

With respect to a transfer of the registered bonds of the United States and of Alabama, which were found in the box, all of such bonds being registered in the name of T. J. Hicks alone, we know of no statute which applies. There are cases in some states which hold that the United States bonds of a similar character are not transferable *inter vivos* at all, except as may be done by authority of the United States. Moore's Adm'r v. Marshall, 302 Ky. 729, 196 S.W.2d 369, 168 A.L.R. 241, annotation page 251; Brown v. Vinson, 188 Tenn. 120, 216 S.W.2d 748. Some of the cases make a distinction between transfers *inter vivos* and those *causa mortis* in this connection. There are also cases to the contrary. Marshall v. Felker, 156 Fla. 476, 23 So.2d 555. For annotation of cases, see 161 A.L.R. 170. We assume for argument that such gifts may be valid as between donor and donee, when the gift is sufficiently consummated. Compare, McLeod v. Brown, 210 Ala. 491, 98 So. 470.

The controversy must be viewed in the light of principles of law well settled. Section 129, Title 47, Code, fixes the guide to be applied. It is in substance that a parol gift of personal property is inoperative until the custody, control, management and *use of the property passes from the donor to donee,* and is possessed by such donee or his agent. That requires a clear surrender of the right and of the dominion in contradistinction of a promise or an intention to surrender. There must be no reservation of any control over the property and nothing must remain to complete the delivery. Davis v. Wachter, 224 Ala. 306, 307, 140 So. 361. The alleged donee must carry the burden of proof by clear and convincing evidence. Hudgens v. Tillman, 227 Ala. 672, 151 So. 863; DeMouy v. Jepson, 255 Ala. 337, 51 So.2d 506; Collins v. Baxter, 231 Ala. 247, 164 So. 61.

A gift of securities may be sustained where, *after delivery,* they are placed in a safe to which both donor and donee have access, or in a safety deposit box rented by the donee, and to which the donor has access by authority of the donee. 24 Am.Jur. 776, section 91. But this only contemplates storage after delivery. We doubt not however that a delivery may be effected by the donor placing the securities in such box with the mutual understanding that thereby their ownership, custody, control, management and use completely pass to the donee, who also accepts them as his own.

The alleged donor here continued to collect and appropriate the income from the securities. There is no evidence of any understanding between them as to that. Appellant does not deny the right of Hicks to do so.

We therefore come to the point where it is material to treat the law affecting such a reservation in a gift of personal property. With respect to the effect upon the transaction of such reservation by the donor of the income from the securities, there seems to be two legal aspects, one is where the gift is evidenced by written instrument, and the other is where it is oral. When it is evidenced by written instrument, the delivery of the instrument

is a sufficient delivery of the property to transfer title, Walker v. Crews, 73 Ala. 412 [2], and the reservation by the donor of a life interest in the property does not serve to defeat the gift. Robertson v. Robertson, 147 Ala. 311, 40 So. 104, 3 L.R.A.,N.S., 774; Adams v. Broughton, 13 Ala. 731. The other aspect of the question is where there is no written instrument evidencing it. In Ragsdale v. Norwood, 38 Ala. 21, the gift of a slave was made to one for life with a remainder over after her death. The gift was by parol. The slave was put in possession of the life tenant, the question being the validity of the remainder. The opinion recognized the principle that to constitute a parol gift of personal property, the power and dominion of the donor must pass into the donee or some other person for him. It was first contended as to the remainderman that there was no possession delivered to him. The answer to that was that the possession of the life tenant was for the remainderman also; but the Court held that the creation of a remainder in personal property by parol gift would open a wide door for injustice, fraud or even perjury, and followed the precedent set by the Supreme Court of Georgia, and held that the remainder attempted to be set up was inoperative and void because it was in parol. This case has been cited with approval in several later cases, in which it is stated that in order for a parol gift to be effectual the donor must not *reserve any interest or postpone the right of actual enjoyment by the donee, or reserve dominion over it;* and if there is such a status the gift by parol is ineffectual. Walker v. Crews, supra; Hicks v. Meadows, 193 Ala. 246, 251, 69 So. 432; compare, Stallings v. Finch, 25 Ala. 518; Connor v. Trawick, 37 Ala. 289.

The out of state authorities which treat the subject indicate that such reservation does not show necessarily an incompleted gift, but that the reservation, if there is one, is a circumstance for the purpose of determining what the intention of the donor was with respect to a present transfer of the property. That is to say, whether he intended to make the gift presently operative and whether it was his purpose to surrender present control and dominion over the property. 24 Am.Jur. 747. The pertinent cases so holding, and cited by appellant, are: In re Chapple's Estate, 332 Pa. 168, 2 A.2d 719, annotation 121 A.L.R. 426; Mangan v. Howard, 238 Mass. 1, 130 N.E. 76; Grant Trust & Savings Co. v. Tucker, 49 Ind.App. 345, 96 N.E. 487, and Ratterman v. Lodge, 8 Cir., 13 F.2d 805.

We do not know what were the terms of the supposed reservation of the income, or how they affected the control or dominion over the property itself. There is no evidence which tends to show by what arrangement Hicks continued to receive the income from the securities for his own benefit.

The record contains much evidence of many circumstances and transactions which might have more or less probative value in connection with the issues thus made. Most of them are consistent with either theory. There is no direct evidence of a gift.

■ The judgment of the trial court as to the stocks and bonds may be well supported regardless of other considerations on the assumption, not controverted by appellant, that if there was a delivery of them to him by Mr. Hicks, there was also a reservation of the income from them for his life. Such a reservation, not in writing, operates to prevent any alleged gift of personalty from taking effect as between the donor and donee.

■ There are other assignments of error by appellant relating to the introduction of testimony. In this connection, we note that the court overruled appellant's objection to some testimony given by appellee, Katie Hicks Powell, in respect to a transaction or statement by deceased T. J. Hicks. This ruling was apparently upon the idea that the statute, section 433, Title 7, Code, known as the "Dead Man's Statute," was solely for the benefit of the estate and prohibited only the party in adverse interest to that of the estate from giving evidence as to the statements or transactions with the deceased. But it has

been held not to be so, although there are some cases which loosely make that statement when it was not necessary to do so. Niehuss v. Ford, 251 Ala. 529, 38 So.2d 484; Pfingstal v. Solomon, 240 Ala. 58, 197 So. 12, and the cases there cited which were fully analyzed.

██ The court was not bound to rule upon objections to testimony, and when he does not make such ruling the presumption of law is that he only considered relevant testimony. This presumption does not obtain when he does make a ruling, section 372(1), Title 7, Pocket Part, Code, and an erroneous ruling in that respect is cause for reversal subject to the principle that the admission of illegal evidence on such trials does not require reversal if the remaining evidence is without conflict and sufficient to support the judgment, Pfingstal v. Solomon, supra; Springer v. Sullivan, 218 Ala. 645, 119 So. 851; Robertson v. Solomon Bros. Co., 229 Ala. 137, 155 So. 553, or if the principle of Rules of Practice in Supreme Court, Rule 45, Code 1940, Tit. 7 Appendix forbids. Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244.

██ The testimony of appellee, as a witness, to which we have referred, is that Hicks "told her that she would be well taken care of." This was said as an inducement to her to join him in a sale of some of the property in which she had inherited an interest from her father. The will of Mr. Hicks made her executrix and gave her $1,000, and made her the residuary legatee. This statement by appellee as a witness was a circumstance which was material in determining the intention of Mr. Hicks and should have been rejected. It occurred in the presence of others who also testified about it. But for that to exclude the operation of the "Dead Man's Statute," the other witnesses must have been parties to the transaction which is the subject of the objection, and associated with the dead man in it. Homewood Dairy Products Co. v. Robinson, 254 Ala. 197, 48 So.2d 28; Southern Natural Gas Co. v. Davidson, 225 Ala. 171(4), 142 So. 63; Frank v. Thompson, 105 Ala. 211, 16 So.

634. The transaction does not partake of that nature.

The testimony of Mrs. Powell should not serve to reverse the decree as to the stocks and bonds.

██ As to the money embraced in the cross assignments of error, there is no field for the operation of the above principle. The money consists of twelve $100 bills. That would not indicate a purpose to use it or derive income from it.

In respect to both the direct and cross assignments of error, we find ourselves unable to reach the conclusion that the result expressed by the trial court was palpably wrong, or that there appears reversible error otherwise as assigned and argued.

Affirmed.

BROWN, LAWSON, SIMPSON and STAKELY, JJ., concur.