Clifford Emond, Jr. v. Commissioner.
Emond v. Commissioner
Docket No. 66326.
United States Tax Court
T.C. Memo 1959-173; 1959 Tax Ct. Memo LEXIS 73; 18 T.C.M. (CCH) 753; T.C.M. (RIA) 59173; August 31, 1959
*73 Held, petitioner is not liable under section 311(a)(1) of the Internal Revenue Code of 1939 as a transferee for any part of the unpaid income taxes of his parents for the taxable years ended February 28, 1953, and 1954. Walter L. Mims, Esq., 514 Massey Building, Birmingham, Ala., for the petitioner. Harold G. Clark, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined that petitioner is liable under section 311(a)(1) of the Internal Revenue Code of 1939 as a transferee of assets of Clifford Emond, Sr., or Clifford Emond, Sr., and Evelyn Catoe Emond, husband and wife, for unpaid income *74 taxes for the taxable years ended February 28, 1953, and 1954 of $1,376.44 and $11,910.08, respectively, or a total of $13,286.52, plus interest as provided by law. There is no dispute as to the correctness of the tax liability of the alleged transferor or transferors. The only issue is whether petitioner is liable as transferee. In his brief the respondent makes the following concession: Respondent in the statutory notices of liability asserted transferee liability in the total amount of $13,286.52, plus interest; however, respondent now claims liability on the part of the transferee only in the amount of $5,000.00 as represented by the bank deposit of $5,000.00 by Clifford Emond, Sr. in the bank account of Clifford Emond, Jr. Findings of Fact The facts stipulated are so found. Petitioner is an individual. He was born December 7, 1925, and is the son of Clifford Emond, Sr., hereinafter sometimes referred to as Senior and Evelyn Catoe Emond, hereinafter sometimes referred to as Evelyn. Senior has been a practicing attorney in Birmingham, Alabama, for about 35 years. Petitioner joined his father as a practicing attorney in February 1950. Petitioner's parents filed joint *75 income tax returns for the taxable years ended February 28, 1953, and 1954 with the district director of internal revenue at Birmingham. Petitioner's parents have agreed to the assessment of deficiencies of $1,376.44 and $1,213.37 determined against them, for the taxable years ended February 28, 1953, and 1954, respectively, and the assessments thereof were made in November 1955. For the taxable year ended February 28, 1954, Senior and his wife filed a joint income tax return disclosing a net tax liability of $18,670.52, of which $18,170.52 remains unpaid, and which amount was assessed on August 1, 1954. Only $10,696.71 of the unpaid portion was asserted as a transferee liability against petitioner. Petitioner acquired his aunt's equity in a house located at 2829 Carlyle Road in Birmingham on July 1, 1935. The occupants of the house at that time were petitioner, his parents, and his sister. About 1946 petitioner purchased a house located in Redmont Park in Birmingham and placed a mortgage on it of approximately $22,000. Petitioner's parents and sister moved from the Carlyle house to the Redmont house. Senior had an understanding with petitioner that for the use of the house *76 at Redmont he would pay the monthly mortgage payments of $198.22 and taxes as they became due and the necessary upkeep of the house. On or about May 12, 1954, petitioner sold the Redmont house. On May 13, 1954, a checking account entitled "Clifford Emond, Jr., Special Account," hereinafter sometimes referred to a the special account, was opened at the First National Bank of Birmingham. Petitioner executed and delivered to the bank powers of attorney in favor of each of his parents covering their withdrawing from or depositing funds to the special account. Senior and Evelyn could use the money in petitioner's special account for any purpose they wished. The initial deposit in the special account consisted of the proceeds from the sale of the Redmont house and was made by petitioner on May 13, 1954, in the amount of $29,749.53. Subsequent to the sale of the Redmont house, petitioner built a house on the Looney Mill Road property which he had purchased from his father for $8,500 free from all encumbrances. Petitioner gave his father a check for the $8,500, which check was later certified as Certification Number 16432. Petitioner's parents and sister then moved into the new house on *77 Looney Mill Road with the same understanding that in lieu of rent Senior would make the monthly payments of $115.50 on the mortgage on the new house and pay the taxes. At the time Senior sold the Looney Mill Road property to his son, there was a mortgage on the property of $1,957.91. Petitioner did not assume that mortgage. The mortgage remained the obligation of Senior. Petitioner later paid off the mortgage of $1,957.91 and in doing so he considered his father was indebted to him for the amount of the payment. From the time the special account was opened, Senior drew checks on the special account for his own benefit. Prior to November 24, 1954, Senior had made no deposit of his own funds to the special account. Between the time the special account was opened and November 24, 1954, checks were drawn on the special account either by petitioner or Senior, for the benefit of Senior, as follows: Date
Drawn By
Payee
Amount
6- 8-54
Petitioner
Audrey Palmer
$1,957.91
8-30-54
Senior
Clarke & Jones
236.90
8-30-54
Senior
Berry Radio &
Appliance Co.
422.70
11- 2-54
Senior
Mrs. Gertrude
Adams
1,170.88
11- 4-54
Senior
Southern Bell
Telephone Co.
47.97
Total as of November 24, 1954
$3,836.36
*78 The check to Audrey Palmer was for the payment of the above-mentioned mortgage on the Looney Mill Road property purchased by petitioner from his father. The check to Clarke & Jones was for a deep freeze purchased by Senior. The check to Adams for $1,170.88 was for rugs and carpeting in the new Looney Mill Road house. The rugs and carpeting were the property of Senior. On November 18, 1954, the credit balance in the special account was $234.79. Petitioner then asked his father to repay the $3,836.36 that had been paid out of the special account for the father's benefit. On November 24, 1954, Senior cashed Certified Check No. 16432 for $8,500 and on the same day made a currency deposit of $5,000 to his son's special account. By so doing, Senior considered he had paid back the $3,836.36 that had been paid out of the special account for his benefit, and that the balance of $1,163.64 would be in the account and available to him at any time he desired to draw upon it. Between December 2, 1954, and April 16, 1955, or less than 5 months from the date of the deposit of $5,000 on November 24, 1954, Senior had withdrawn from the special account for his own benefit the amount of $1,275.22, *79 or $111.58 in excess of the balance of $1,163.64. The $5,000 which Senior deposited in the special account on November 24, 1954, was the only deposit to that account made by Senior. The deposit did not constitute a gift to petitioner by Senior. As of October 31, 1954, the total assets of Senior and Evelyn were $37,646.05 and the total liabilities, including unpaid Federal tax liabilities as of that date, were $46,484.80. Senior and Evelyn were insolvent on November 24, 1954. On July 5, 1956, Robert M. Strong, an internal revenue officer, made a demand in person upon Senior to pay his outstanding tax liabilities. Senior told Strong that he was unable to pay any part of his accounts. Shortly prior to July 25, 1956, respondent mailed a written demand to both Senior and Evelyn for their unpaid taxes. On or about July 25, 1956, Senior came to Strong's office and they drew up an agreement for Senior to pay the unpaid taxes on certain terms, but to date no payments have been made. The notices of alleged transferee liability were mailed to petitioner on December 18, 1956. Opinion Respondent contends that the deposit by petitioner's father of $5,000 in currency to petitioner's *80 special account at the First National Bank of Birmingham on November 24, 1954, while petitioner's parents were insolvent and indebted to the United States for unpaid income taxes and additions of over $30,000, constituted a gift from father to son, and that by reason of such alleged transfer, petitioner is liable as a transferee under section 311(a)(1) of the Internal Revenue Code of 1939[1] to the extent of $5,000 in respect of such unpaid taxes. The burden of proving transferee liability is upon the respondent. Section 1119(a), I.R.C. of 1939. [2]
*81 Petitioner contends that the deposit in question did not constitute a gift to him by his father and that he is not liable as transferee under section 311. The evidence clearly shows that at the time Senior deposited the $5,000 of currency in his son's special account, the father was indebted to his son in the amount of $3,836.36 and that the deposit was intended to and did serve to discharge that debt. As to the balance of $1,163.64, the evidence is also clear that both father and son considered that this balance was available to Senior at any time he desired to draw upon it. In less than 5 months from the date of the deposit, the father had drawn out all of the $1,163.64. Upon such evidence we are unable to find as an ultimate fact requested by the respondent that "The deposit of $5,000.00 on November 24, 1954, in the special bank account of Clifford Emond, Jr. by Clifford Emond, Sr. was a gift and given without consideration." We hold that the said deposit did not constitute a gift. Adolph Weil, 31 B.T.A. 899, affd. 82 Fed. (2d) 561 (C.A. 5, 1936), certiorari denied, 299 U.S. 552; R. C. Coffey, 1 T.C. 579, affd. 141 Fed. (2d) 204 *82 (C.A. 5, 1944); Marguerite F. Schwarzenbach, 4 T.C. 179; Oliver M. Kaufmann, 6 T.C. 444; Collins v. Baxter, 231 Ala. 247, 164 So. 61. Respondent also contends that without regard to whether the deposit in question constituted a gift, petitioner is liable as a transferee under section 311, supra, by reason of a provision in the Code of Alabama, 1940, title 20, section 7, [3] relating to the rights of creditors to void conveyances made to hinder, delay, or defraud. We fail to see where this provision of the Alabama Code is *83 of any help to the respondent under the facts of this case. We have found that of the $5,000 which Senior deposited in his son's special account, $3,836.36 was to pay a debt owing petitioner by Senior of that amount. As to the balance of $1,163.64, the evidence shows that Senior withdrew all of this amount for his own benefit in less than 5 months from the date of the deposit and before the notices of transferee liability were issued. Assuming, without deciding, that while any part of the $1,163.64 remained in petitioner's special account, respondent could have obtained some possible relief against petitioner under this provision of the Alabama Code, we are of the opinion that such a possibility disappeared with the later withdrawal of such funds by Senior for his own benefit before the notices of liability were issued. At the time the notices were issued, petitioner was not a "transferee of property of a taxpayer" as that term is used in section 311(a)(1), supra. The respondent's determination herein is disapproved. Decision will be entered for the petitioner. Footnotes
1. SEC. 311. TRANSFERRED ASSETS. (a) Method of Collection. - The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds): (1) Transferees. - The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter. ↩
2. SEC. 1119. PROVISIONS OF SPECIAL APPLICATION TO TRANSFEREES. (a) Burden of Proof. - In proceedings before the Board the burden of proof shall be upon the Commissioner to show that a petitioner is liable as a transferee of property of a taxpayer, but not to show that the taxpayer was liable for the tax.↩
3. All instruments made to hinder, delay, or defraud persons, void as to them. - All conveyances, or assignments in writing, or otherwise, of any estate or interest in real or personal property, and every charge upon the same, made with intent to hinder, delay, or defraud creditors, purchasers, or other persons of their lawful suits, damages forfeitures, debts, or demands; and every bond, or other evidence of debt given, suit commenced, decree or judgment suffered, with the like intent, against the persons who are or may be so hindered, delayed, or defrauded, their heirs, personal representatives and assigns, are void.↩